### AMERADA PETROLEUM CORPORATION v. LOVELACE et al.

No. 28348. Dec. 13, 1938.

Clayton B. Pierce, Truman B. Rucker, and Fred M. Mock, for petitioner.

Pryor & Sandlin, C. E. Wilson, and Mac Q. Williamson, Atty. Gen., for respondents.

PER CURIAM. The parties will be referred to as petitioner and claimant. On the 3rd day of March, 1937, Virgil F. Lovelace sustained an accidental injury to his arm, back, and head while employed as a pumper for the Amerada Petroleum Corporation. He was adjusting a board from the top of a 210-barrel stock tank across a four-inch line running from the settling tank to the stock tank, and had crawled out on the board to put on a Skinner pipe joint clamp, when the connections broke and he fell to the ground, a distance of approximately 15 feet. The employer reported the accident on Form 2 and stated that the employee had sustained a fracture and dislocation of the left elbow. This report was made May 12, 1937. On the same date there was received and filed a report of initial payment of compensation. This report was made on the regular Form 6 and shows payment of $18 on the 29th day of March, 1937, and a total payment of $144 up to and including the 5th day of April, 1937. It gave the nature of the injury as a left elbow fracture. On the report is a notation as follows: "Form 7 to follow." On August 23, 1937, there was received and filed another Form 6 report of initial payment of compensation showing $18 paid March 29, 1937, to and including August 9, 1937, and on this report the nature of the injury is also given as a left elbow fracture. Under the column marked "Remarks" it is stated:

"Attached hereto is the attending physician's report showing that this claimant has been released by the attending physician and is able to do any kind of work as of August 12, 1937. Weekly payments of compensation will be continued, the amount paid to be applied on whatever permanent disability this claimant is shown to have."

Following this is a letter dated August 12, 1937, from the Von Wedel Clinic stating that the employee had been released from further medical care and advising that claimant could engage in any kind of work and use "this hand." In this letter it was stated that the claimant has some permanent disability, but that the disability will be decreased considerably after he uses the hand for a period of three or four months. On August 30, 1937, the claimant filed first notice of injury and claim for compensation. Under the statement "nature and extent of injury" is given "broken arm and injured back and head." On September 14, 1937, there was received and filed a Form 7 stipulation and receipt signed by Virgil F. Lovelace and the Amerada Petroleum Corporation. This receipt purported to cover all temporary disability up to and including August 12, 1937, and recites that it was payment for 19 weeks exclusive of the five-day waiting period. The total paid was $354.

On September 11, 1937, there was received and filed a motion in which it is stated that total temporary disability had ceased; that Form 7 had been duly signed and filed, and that claimant wished to determine the extent of the permanent disability. The first hearing on this application was held at Holdenville, Okla., on October 27, 1937. Virgil F. Lovelace was a witness for himself. At this time he was asked whether he suffered any further injury other than that to his arm, and he stated that he had injured his back, leg, head, and neck. Dr. John E. Munal also testified that claimant had an injury to his neck, back, and knee. Dr. Robinson likewise testified that there was a permanent injury to the back, neck, and head.

On the 27th day of November, 1937, the State Industrial Commission entered an award for 60 per cent. disability to the left arm, and in addition ordered payment of $18 per week for not to exceed 300 weeks for permanent partial disability under the

"other cases" provision of section 13356, O. S. 1931 (85 Okla. St. Ann. sec. 22). This order directed payment of $2,700, for the 60 per cent. disability to the arm, in a lump sum.

There is no doubt that there is competent evidence to sustain the finding of the State Industrial Commission that in addition to the disability to the arm the claimant also has a permanent partial disability as a result of the injury.

It is first urged that because no statement was made about the injury to the back and head until the filing of the employee's first notice on August 30, 1937, the State Industrial Commission was without authority to enter any award for any injury other than to the arm. It is pointed out that neither of the physician's reports mentioned any injury other than that to the arm. Not a single authority is cited in support of the proposition by the petitioner. We hold that this position is untenable. Where payment has been made for the temporary total disability and medical service rendered by the employer, the employee has one year in which to file his claim under section 13367, O. S. 1931 (85 Okla. St. Ann. sec. 43). The purpose of the statutory written notice provided by section 13358, O. S. 1931 (85 Okla. St. Ann. sec. 24), is to afford an opportunity to the employer to investigate to determine whether there is an accidental injury within the terms of the Workmen's Compensation Law. The employee is not bound to furnish notice of the nature and extent of the disability, and when the matter comes on for hearing the State Industrial Commission is authorized to hear evidence and make any award the evidence justifies where no former award has been made. Petitioner also says that Form 7 described the injury as comminuted fracture of the left elbow, head of radius torn off, and the olecranon process of the ulna torn off. In Skelly Oil Co. v. Standley, 148 Okla. 77, 297 P. 235, the original agreement in lieu of a claim filed mentioned only a crushed chest, cut leg, bruised face, and mashed finger. The State Industrial Commission entered an award for an arm injury thereafter. The court criticized a rule formerly announced in Cagle v. Federal Mining & Smelting Co., 112 Okla. 247, 240 P. 617, and said:

"The Cagle Case, supra, holds a claim, made for an injury, more than six months after the accident and not reported in the original claim, cannot become the basis for modifying an award upon a ground of change in condition (section 7296) when 'the latter injury is disassociated as an effect from the first injury.'

"We decline to follow the dictum contained in the Cagle Case, which approved the reasoning in the Ehrhart Case."

In Oklahoma Gas & Electric Co. v. Hunsicker, 178 Okla. 565, 63 P.2d 21, after citing a number of cases where the employer had filed reports or there had been payments for temporary disability, the court said:

"The cases we have cited stand for the principle that if the employer receives notice of the accident, this is sufficient even though the notice does not specifically enumerate all the injuries received."

Other authorities to the same effect are Gypsy Oil Co. v. Jackson, 158 Okla. 139, 12 P.2d 694; Sinclair Prairie Oil Co. v. Smith, 168 Okla. 483, 34 P.2d 248. Since the petitioner admits that it had notice of the arm injury, and in fact paid all temporary total disability for the injury as shown by the filing of Form 7, we think the authorities cited clearly disclose jurisdiction of the State Industrial Commission to consider the evidence of the further disability by reason of the injury to the head and back.

The next proposition presented by the petitioner is that the State Industrial Commission was without authority to commute to a lump sum of $2,700 the payment for the disability to the arm. It is stated that no notice was given of intention to commute to a lump sum, and that the order in this respect conflicts with the rule announced in Derr v. Weaver, 173 Okla. 140, 47 P.2d 573. Therein the court held that an award formerly made and which had become final could not be changed without notice. We hold that where no former award has been made, the State Industrial Commission has the right, in a proper case, to commute to a lump sum any award it is so authorized to commute; and the fact that there has not been any formal written application theretofore filed or notice given of such request for a commutation to a lump sum will not invalidate an order commuting the award to a lump sum. In this connection it is urged that under section 13365, O. S. 1931 (85 Okla. St. Ann. sec. 41), the State Industrial Commission is without authority to commute to a lump sum until after the award has first become final. The plain provisions of section 13365, supra, are that a specific injury can be commuted to a lump sum. The provision as to commutation as prescribed therein has been explained and limited in Cornhuskers Theatres v. Foster, 181 Okla. 341, 74 P.2d 109. We hold that there was no error in commuting the payment for the specific injury to a lump sum.

It is next urged that, since the State Industrial Commission in determining the decrease in wage-earning capacity took into

consideration the loss of the specific member the order is contrary to law. We have held that an award may be made under the "other cases" provision of section 13356, supra, in addition to the award for loss of a specific member. Shawnee Cotton Oil Co. v. Bumgarner, 180 Okla. 103, 67 P.2d 959; Eubanks v. Barnsdall Oil Co., 169 Okla. 31, 35 P.2d 873; Fox v. Brown, 176 Okla. 201, 55 P.2d 129. In Shawnee Cotton Oil Co. v. Bumgarner, supra, we said:

"Where an injury to a workman results in permanent partial disability, a part of which disability is manifested by the loss of, or partial or total loss of use of, a specific member, which portion of the disability is capable of classification under the specific disability schedule of section 13356, O. S. 1931 (85 Okla. St. Ann. sec. 22) and the remainder of the disability is incapable of such classification, the injured workman is entitled to compensation for the loss of, or partial or total loss of use of, the specific member without regard to the effect thereof upon his earning capacity, and in addition he is entitled to compensation for the unclassified disability under the 'other cases' clause of section 13356, supra, in accordance with the effect thereof on his earning capacity which is not attributable to the loss of a specific member."

We hold the additional award is properly made under the above authorities. This also disposes of proposition 5, based upon this additional award, wherein it is stated that the award is excessive and pays $18 per week for the arm injury and $18 per week for the permanent partial award under the "other cases" provision. The sixth proposition is that the State Industrial Commission erred in refusing to hear the petitioner's motion to modify and vacate the award. Section 13363, O. S. 1931 (85 Okla. St. Ann. sec. 29), provides that either party may commence a proceeding to review an award of the State Industrial Commission. If there are errors in the award, they can be considered in the proceeding to review such final order. In fact, under the sixth proposition the petitioner has recapitulated all the allegations of error contained in the petition filed in this case.

It is next urged that there is no competent evidence to sustain the finding that the claimant sustained a loss of wage-earning capacity. With this contention we agree. We shall discuss this objection with that made by petitioner with relation to the finding of the State Industrial Commission that the claimant has no wage-earning capacity.

We have held in Southwestern States Telephone Co. v. State Industrial Commission, 181 Okla. 533, 75 P.2d 468, that the State Industrial Commission is without authority to enter an award for permanent partial disability under the "other cases" provision of section 13356, supra, and at the same time make a finding that the claimant has no wage-earning capacity. All of the testimony furnished by the claimant relates to the nature and extent of the disability. The testimony of the physicians tends to disclose that the claimant is permanently and totally disabled. If he is permanently and totally disabled, he is entitled to an award for permanent total disability under subdivision 1 of section 13356, supra, and not under subdivision 3 of that section. In Cornhuskers Theatres v. Foster, supra, we said:

"Decrease in the wage-earning capacity is a question of fact, to be computed by determining how much the ability to earn wages has been reduced by reason of the physical disability."

There is no competent evidence from which the State Industrial Commission was authorized to find that claimant suffered a decrease in wage-earning capacity of any particular amount. Evidence should be taken to determine the extent of the loss of wage-earning capacity.

The award should be vacated, with directions to set the cause for further hearing to determine how much the wage-earning capacity has been decreased by reason of the disability.

Award vacated, with directions.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, CORN, and HURST, JJ., concur.