Betty A. CROCKER, Appellee,

v.

James C. CROCKER, Appellant.

No. 75262.

Supreme Court of Oklahoma.

Dec. 10, 1991.

Michael Salem, Salem Law Offices, Norman, for appellant.

Fred J. Shaeffer, Shaeffer Law Office, Norman, for appellee.

KAUGER, Justice.

The issues presented are: 1) whether a lump sum workers' compensation payment is considered to be joint property for the purpose of marital property division; 2) whether social security disability payments are joint property acquired during coverture; and 3) whether the accrued equity in the couple's home could be divided between the parties after the home had been awarded to the husband in the couple's prior divorce. We find that: 1) A workers' compensation award is marital property only to the extent to which it reimburses the couple for loss of income during the marriage. To the extent that it compensates for loss of post-divorce earnings by the injured party, it is separate property, even if the compensable injury occurred during the marriage. 2) A lump-sum payment from the Social Security Administration for accumulated disability benefits is not marital property subject to equitable division. 3) Because the couple's residence had been awarded to the husband in their previous divorce, and because neither party sought to change its ownership status after their remarriage, the trial court erred in awarding the wife one-half of the equity in the house.

## FACTS

Betty Crocker (wife/appellee) is an insurance supervisor with the Norman Regional Hospital. James Crocker (husband/appellant) is a former truck driver who now has a realtor's license. James has had a total colectomy and an ileostomy because he has ileitis and/or Crohn's disease. While working as a truck driver in December of 1987, James sustained a hernia. James is unable to perform manual labor or to lift over ten pounds. Apparently, he requires further surgery to repair the hernia.

On April 18, 1989, James received $39,824.65 in Workers' Compensation benefits. The check was made out to James and Betty, but the proceeds were deposited in James' separate checking account. When Betty filed for divorce on June 16, 1989, $20,000.00 was left in the account. Because James was unemployed, he drew on it for his living expenses, and approximately $16,000.00 remained in the account at the time of the trial on February 14, 1990. Because of his physical condition, James also applied for social security disability benefits. After Betty filed for divorce, James was notified that he would receive an $11,390.00 lump-sum award for accrued social security disability payments.

This is the third time that the couple has been divorced. They married for the first time on November 14, 1966, and they were divorced in March of 1968. The second marriage occurred on September 11, 1970,

and the second divorce was granted on September 26, 1977. They remarried on Valentine's Day in 1978, and the third marriage ended in divorce on February 14, 1990.

James was awarded the home in the 1977 divorce. When James and Betty remarried in 1978, the house remained in his name. Although the couple maintained separate joint checking accounts, the house payments were usually made from a joint account. Most of the deposits into that account came from James' earnings. Sometimes, Betty paid the utility bills and other expenses from her separate account. After a hearing on the merits, the trial court divided the property. Betty received 50% of the remaining workers' compensation award and 50% of the lump sum social security back payments. The court also ordered the house sold and the net profits divided equally between James and Betty. James appealed.

## I

## A WORKERS' COMPENSATION DISABILITY AWARD IS MARITAL PROPERTY ONLY TO THE EXTENT TO WHICH IT REIMBURSES THE COUPLE FOR LOSS OF INCOME DURING THE MARRIAGE. TO THE EXTENT THAT IT COMPENSATES FOR THE LOSS OF POST–DIVORCE

## EARNINGS BY THE INJURED PARTY, IT IS SEPARATE PROPERTY.

This case presents one issue of first impression—whether a lump sum award received in settlement of a workers' compensation claim before the spouse filed for divorce constitutes jointly-acquired property subject to property division in a divorce proceeding.[1] There is no uniformity among the jurisdictions which have considered this question.[2] Workers' compensation awards have been treated as wages, personal injury recoveries, marital property, and separate property in effecting a property division. Regardless of the diversity of treatment by various state courts, four basic approaches, which have also been used in determining personal injury awards, have been advocated: 1) a mechanistic division; 2) a case by case division; 3) an unitary division; and 4) an analytical division.

### A.

### The Mechanistic Approach

Under the mechanistic or mathematical approach, courts usually find that workers' compensation awards acquired during coverture are subject to division as marital property. Generally, courts which use the mechanistic method do so because of express statutory definitions controlling the

1. We held in *Meadows v. Meadows*, 619 P.2d 598, 600 (Okla.1980), that workers' compensation awards are not exempt from alimony claims.

2. Several states appear to categorize workers' compensation benefits as wages. *Cummings v. Cummings*, 540 A.2d 778–79 (Me.1988); *Orszula v. Orszula*, 292 S.C. 264, 356 S.E.2d 114 (1987); *Weakley v. Weakley*, 731 S.W.2d 243–44 (Ky. 1987); *In re Marriage of Cupp*, 152 Ariz. 161, 730 P.2d 870, 872 (Ct.App.1986). Other jurisdictions, adopt the approach which treats a workers' compensation award as a personal injury recovery. *Cook v. Cook*, 102 Idaho 651, 637 P.2d 799, 801–02 (1981); *West v. Ortego*, 325 So.2d 242, 248–49 (La.1975); *Gerlich v. Gerlich*, 379 N.W.2d 689, 691 (Minn.Ct.App.1986). However, some states have classified workers' com-

pensation claims still pending at the time of divorce as marital property. *Goode v. Goode*, 286 Ark. 463, 692 S.W.2d 757, 759 (1985); *In re Marriage of Thomas*, 89 Ill.App.3d 81, 44 Ill.Dec. 430–31, 411 N.E.2d 552–53 (1980). While one state categorizes periodic workers' compensation payments received during the marriage and after coverture as the injured worker's separate property on the theory that the payments represent compensation for personal injury rather than lost wages. *Richards v. Richards*, 59 N.M. 308, 283 P.2d 881 (1955). See also, Blumberg, "Marital Property Treatment of Pensions, Disability Pay, Workers' Compensation, and Other Wage Substitutes: An Insurance, or Replacement, Analysis", 33 UCLA L.Rev. 1250, 1273 (1986); B. Grundy, "Equitable Division of Personal Injury or Worker's Compensation Award," 6 OBA Family Law Section Update 15 (1991).

division of separate and marital property.[3]

### B.

### The Case by Case Approach

The Supreme Court of Iowa, *In re Marriage of McNerney*, 417 N.W.2d 205, 208 (Iowa 1987), rejected the analytical method and adopted a case by case approach. The Iowa court found that the terms mechanistic and analytic were misleading. It decided that the better approach was to divide the property on a case-by-case basis.[4]

### C.

### The Unitary Approach

The unitary approach characterizes the award as being uniquely personal to the injured spouse. The award is treated as the separate property of the injured individual.[5] This theory is the most simplistic, and it is the one the husband and the dissent urge us to endorse.

 However attractive the unitary approach might be, it is precluded by the Workers' Compensation Act and by our decisions interpreting it. Historically, in Oklahoma, workers' compensation awards have not been characterized as being personal to the injured employee or strictly denominated as compensation for the loss of physical abilities. From its inception, the purpose of workers' compensation, has been twofold: 1) to provide support for workers during periods of actual disability, and 2) for their dependents in the event of an occupationally-related death, or to cover hospital, medical and funeral expenses.[6]

As early as 1924, this Court in *Skelton Lead & Zinc Co. v. State Indus. Comm.*, 100 Okla. 188, 229 P. 255, 257 (1924), interpreted the Act as providing compensation for the disability to work, based upon the average weekly wage, and not as an indemnity for physical impairment.[7] The Court examined the legislative purpose of the Act, and it determined that the purpose was to assure the industrious worker and the worker's dependents a reasonable support and maintenance during the period of enforced idleness resulting from any unfortunate accident which could destroy or impair earning capacity. In *Commons v. Bragg*, 183 Okla. 122, 80 P.2d 287, 290 (1938), the Court determined that the Legislature intended for the workers' compensation benefits to flow to the injured workers and their dependents. This approach was intended to prevent the workers and their families from becoming public charges.

 In *Van Orman v. Robinson*, 150 Okla. 156, 300 P. 412, 414 (1931), this Court discussed the purpose of a workers' compensation award. We found that the basis for compensation under the Act is the wage earning capacity of the employee and the degree of his/her impairment. Although the statute does not specifically refer to physical injuries, an award will not be made unless a physical injury has occurred. The inability to earn wages by an injured worker is an incapacity within the meaning of the workers' compensation law.

 This Court has not strayed from this traditional concept of workers' compensation. The Act has not been changed significantly since its inception. Oklahoma

---

3. *Orszula v. Orszula*, see note 2, at p. 115 supra; *Goode v. Goode*, see note 2, supra; *Johnson v. Johnson*, 638 S.W.2d 703, 704 (Ky.1982); *In re Marriage of Detore*, 86 Ill.App.3d 540, 42 Ill.Dec. 51–52, 408 N.E.2d 429, 430 (1980). See also, *Smith v. Smith*, 113 Mich.App. 148, 317 N.W.2d 324, 236 (1982) (The court based its action on the fact that the workers' compensation act was intended for both the worker and his/her dependents.). See, *Kozich v. Kozich*, 397 Pa.Super. 463, 580 A.2d 390, 393 (1990); *In re Marriage of Fjeldheim*, 676 P.2d 1234, 1236 (Colo.Ct.App. 1983).

4. Nevertheless, for all practical purposes, the Court adopted the mechanistic approach even though Iowa does not have a statute classifying certain assets as marital property.

5. *Gloria B.S. v. Richard G.S.*, 458 A.2d 707–08 (Del.Fam.Ct.1983). See, *Izatt v. Izatt*, 627 P.2d 49, 51 (Utah 1981).

6. 2 A. Larson, *The Law of Workmen's Compensation*, § 15.14 (1986).

7. *United States Casualty Co. v. Steiger*, 179 Okla. 407, 66 P.2d 55, 57 (1937); *Van Orman v. Robinson*, 150 Okla. 156, 300 P. 412, 414 (1931).

has not adopted a policy based on the loss of bodily function. Awards continue to be based on compensation in lieu of wages. *Stare decisis* does not support a finding that the enactment of 85 O.S.Supp.1990 § 22,[8] which lists various ailments to the body and which prescribes a fixed number of weeks of compensation for that injury is based on physical injury rather than a loss of wages. Although scheduled payments are not dependent on actual wage loss, the enactment of § 22 does not result in a deviation from the underlying principle of compensation law. The basic theory of compensation to replace wage earning capacity remains the same. The only difference is that the effect on earning capacity is a conclusively presumed one, rather than a specifically proven one based on the individual's actual wage-loss experience.[9] Oklahoma has had a schedule of benefits since 1915.[10] The basic theory of workers' compensation has remained the same—that the benefits received relate to the loss of earning capacity and not to an employee's physical disability.

## D.

### The Analytic Approach

The analytical approach attempts to determine the underlying nature of a workers' compensation award before deciding whether it constitutes separate or marital property. Under this method, the separate property of the injured spouse includes economic losses occurring after the termination of the marriage, including the amount of the award which constitutes loss of future wages and future medical expenses.[11] The marital property subject to division encompasses the amount of the award which represents lost wages or lost

---

**8.** Title 85 O.S.Supp.1990 § 22, see note 16, supra.

**9.** *Smith v. Department of Employment Serv.,* 548 A.2d 95, 101 (D.C.App.1988); 2 A. Larson, *The Law of Workmen's Compensation,* § 58.11 (1986).

**10.** Okla.Stat., Ch. 42–A, Art. II, § 3782j (1915) provides in pertinent part:

"The following schedule of compensation is hereby established:
1. Permanent Total Disability. In case of total disability adjudged to be permanent, fifty per centum of the average weekly wages shall be paid to the employee during the continuance of such total disability, not exceeding five hundred weeks....
2. Temporary Total Disability. In case of temporary total disability, fifty per centum of the average weekly wages shall be paid to the employee during the continuance thereof, but not in excess of three hundred weeks, except as otherwise provided in the act.
3. Permanent Partial Disability. In case of disability partial in character but permanent in quality the compensation shall be fifty per centum of the average weekly wages and shall be paid to the employee for the period named in the schedule as follows:
Thumb. For the loss of a thumb, sixty weeks.

Great toe. For the loss of a great toe, thirty weeks.

Hand. The loss of a hand, two hundred weeks.

Arm. For the loss of an arm, two hundred fifty weeks.
Foot. For the loss of a foot, one hundred fifty weeks.
Eye. For the loss of an eye, one hundred weeks.
Leg. For the loss of a leg, one hundred seventy-five weeks.
Loss of use. Permanent loss of the use of a hand, arm, foot, leg or eye, shall be considered as the equivalent of the loss of such hand, arm, foot, leg or eye.
Amputations. Amputation between the elbow and the wrist shall be considered as the equivalent of the loss of a hand....
The compensation for the foregoing specific injuries shall be in lieu of all other compensation, except the benefits provided in section 4 of article 2 (3782h) of this act...."

**11.** This approach has been derived from the division of personal injury awards in divorce actions and in those cases the division of the award includes those listed for workers' compensation and the following: 1) Noneconomic compensatory damages of pain, suffering, disability, and loss of ability to conduct a normal life are included in the injured spouse's separate property. In *Kirk v. Kirk,* 577 A.2d 976, 979 (R.I.1990), the court stated that its workers' compensation statute did provide in addition to replacement of earning capacity, the worker was compensated for disfigurement and/or loss of use of a limb. 2) The separate property of the noninjured spouse includes loss of consortium. 3) The marital property should also include those funds for which no allocation can be made. *Weisfeld v. Weisfeld,* 545 So.2d 1341,

earning capacity sustained during coverture as well as medical expenses paid during the marriage.[12]

To determine what portions of the award are marital property or separate property under the analytical approach, various jurisdictions have addressed these issues: 1) The purpose of the award, e.g., was it made for lost earnings, loss of future earning capacity, or some other purpose. 2) The time period of any diminished earning potential or disability is relevant. 3) The nature and date of the underlying injury should be ascertained. 4) The terms of the award are important, i.e., when the award vested, the total amount of the settlement and any other known specifics of the award itself.[13]

■ In Oklahoma, the dispositive issue in evaluating workers' compensation benefits as separate or marital property, is not whether the right to receive benefits vested during the marriage, but rather to the extent to which the award compensates for loss of earning capacity during the marriage.[14] The Workers' Compensation Act allows a lump sum payment only for permanent partial disability or permanent total disability.[15] The awards are contained in 85 O.S.Supp.1990 § 22. Payment is based on a percentage of the employee's wages for a set number of weeks.[16] Compensa-

---

1346 (Fla.1989). See, *Johnson v. Johnson,* 317 N.C. 437, 346 S.E.2d 430, 438 (1986).

**12.** The following cases represent equitable distribution jurisdictions which have adopted the analytic approach: *Bandow v. Bandow,* 794 P.2d 1346, 1348 (Alaska 1990); *Kirk v. Kirk,* 577 A.2d 976, 979 (R.I.1990); *Weisfeld v. Weisfeld,* see note 11, supra; *Queen v. Queen,* 308 Md. 574, 521 A.2d 320, 327 (Md.1987); *In re Marriage of Blankenship,* 210 Mont. 31, 682 P.2d 1354, 1357 (1984); *Ward v. Ward,* 453 N.W.2d 729, 732 (Minn.Ct.App.1990); *Wilk v. Wilk,* 781 S.W.2d 217, 223 (Mo.App.1989); *Lentini v. Lentini,* 236 N.J.Super. 233, 565 A.2d 701–02 (1989). See *Johnson v. Johnson,* see note 11, supra. The following cases reflect the adherence to the analytic approach by the community property states: *Cook v. Cook,* see note 2, supra; *West v. Ortego,* see note 2, supra; *In re Marriage of Cupp,* see note 2, supra; *In re Marriage of Robinson,* 54 Cal.App.3d 682, 126 Cal.Rptr 779, 781 (1976).

**13.** *In re Marriage of Blankenship,* see note 12, supra; *Wilk v. Wilk,* see note 12, supra.

**14.** *Miller v. Miller,* 739 P.2d 163, 165 (Alaska 1987); *Queen v. Queen,* see note 12, supra; *Pauley v. Pauley,* 771 S.W.2d 105, 107 (Mo.App. 1989).

**15.** The record does not indicate whether the lump-sum settlement was for permanent partial disability or permanent total disability. Title 85 O.S.1981 § 41 provides in pertinent part:

"A. ... Whenever an injured person receives an award for permanent partial disability, permanent total disability or death benefits, the injured employee or claimant for good cause shown, may have the award commuted to a lump-sum payment by permission of the Court....
B. ... Total permanent awards shall not be commuted to a lump-sum payment except as to legal services as provided herein...."

**16.** Title 85 O.S.1981 § 22 provides in pertinent part:

"The following schedule of compensation is hereby established:
1. Permanent Total Disability. In case of total disability adjudged to be permanent, sixty-six and two-thirds percent ($66\frac{2}{3}\%$) of the employees average weekly wages shall be paid to the employee during the continuance of such total disability....
3. Permanent Partial Disability. In case of disability, partial in character but permanent in quality, the compensation should be sixty-six and two-thirds percent ($66\frac{2}{3}\%$) of the employee's average weekly wages, and shall be paid the employee for the period named in the schedule, as follows: ...
Hernia: In case of an injury resulting in hernia, temporary total compensation for fourteen (14) weeks, and the cost of an operation shall be payable; provided, in any case where the injured employee has been twice previously operated for hernia in the same area and it is established by opinion of a competent surgeon that further surgery in the same area will not result in full relief of the condition, the Court may then award compensation for disability resulting therefrom under paragraph 1 of this section, or, if not totally and permanently disabled, then under the 'Other Cases' subdivision following, and after, a second surgical attempt to repair hernia, the injured may not be required to submit to further surgery in an effort to relieve the disability thereafter existing; provided, further, the use of any artificial reinforcement or device, with or without surgery, shall not be the basis of reducing extent of disability to be awarded.
Other Cases: In all other classes disabilities, excluding only those heretofore referred to in paragraph 3, which disabilities result in loss of use of any portion of an employee's body, and which disabilities are permanent in quality but partial in character, disability shall

tion is not paid to reimburse for injuries sustained. It is awarded for compensation in lieu of wages during the duration of the impairment.[17]

Our analysis in *Christmas v. Christmas*, 787 P.2d 1267–68 (Okla.1990), is helpful in determining which of the four approaches—mechanistic, unitary, case by case, or analytic—meshes with the Oklahoma Workers' Compensation Act. There, we adopted a "replacement approach" to the division of disability insurance proceeds. In *Christmas*, the Court held that if proceeds replaced wages earned during the marriage, the proceeds were marital property. The approach adopted in *Christmas* closely resembles the analytic approach utilized by other jurisdictions in workers' compensation cases. Workers' compensation and disability insurance are both forms of deferred compensation.[18] They may be treated similarly for property division purposes.

█ Because our workers' compensation law characterizes awards as money in lieu of wages, and because of our prior treatment of disability awards in *Christmas*, we adopt the analytical approach. A workers' compensation disability award is marital property only to the extent that it recompenses for the couple's loss of income during the marriage. To the extent that it compensates for loss of post-divorce earnings by the injured party, it is separate property. Because a former spouse has no inherent right to the salary earned by his/her former marriage partner after the marriage is terminated, there is no right to a disability award which is intended to replace future wages.[19]

Under Oklahoma law, a workers' compensation award is calculated on average weekly wages and the number of payments is calculated on a weekly basis.[20] Therefore on remand, the trial court must determine whether the award covered any week prior to the couple's divorce. If so, it is marital property. Any portion of the award which is for any weeks of compensation after the divorce is not marital property subject to property division.

## II

### LUMP–SUM SOCIAL SECURITY PAYMENT WHICH REPRESENT ACCRUED DISABILITY BENEFITS ARE NOT MARITAL PROPERTY SUBJECT TO PROPERTY DIVISION.

█ Betty relies on *Christmas* for the proposition that the lump-sum Social Security payments which represented James' accrued disability benefits constitute marital property subject to equitable division. *Christmas* involved disability benefits from the Oklahoma Firefighters Pension and Retirement Board, and it is not dispositive. Although we found that the husband's *post-divorce* disability payments were separate property, Social Security disability benefits were not involved. Therefore, her reliance is misplaced.

In *Umber v. Umber*, 591 P.2d 299, 301–02 (Okla.1979), we held that: 1) the inclusion of Social Security benefits in the division of marital property would interfere with the express statutory plan of the Social Security Act, and 2) that such division is forbidden by the supremacy clause of the

mean the percentage of permanent impairment. The compensation ordered paid shall be sixty-six and two-thirds percent (66⅔%) of the employee's average weekly wage for the number of weeks which the partial disability of the employee bears to five hundred (500) weeks...."
This provision was amended in 1990, however, the cited portions are substantially identical.

17. Title 85 O.S.Supp.1988 § 3(6) provides:
"(6) 'Compensation' means the money allowance payable to an employee as provided for in the Workers' Compensation Act."

This section was amended in 1990, however, the provision remains the same.
*Service Pipe Line Co. v. Cargill*, 289 P.2d 961–62 (Okla.1955); *Nelson v. Rialto Mining Co.*, 194 Okla. 628, 154 P.2d 87, 89 (1944).

18. *Christmas v. Christmas*, 787 P.2d 1267–68 (Okla.1990).

19. *Miller v. Miller*, 739 P.2d 163, 165 (Alaska 1987); *Queen v. Queen*, see note 12, supra; *Pauley v. Pauley*, 771 S.W.2d 105, 107 (Mo.App. 1989).

20. See 85 O.S.Supp.1990 § 22, note 16, supra.

United States Constitution, Art. VI, cl. 2.[21] The *Umber* Court also found that because Congress can alter or retract social security benefits at any time, they cannot be considered to be an accrued property right.[22] Pursuant to our teaching in *Umber,* social security benefits are not divisible as marital property.

## III

### BECAUSE THE COUPLE'S RESIDENCE HAD BEEN AWARDED TO THE HUSBAND IN THEIR PREVIOUS DIVORCE, AND BECAUSE NEITHER PARTY SOUGHT TO CHANGE ITS OWNERSHIP STATUS AFTER REMARRIAGE, THE WIFE IS NOT ENTITLED TO A ONE-HALF INTEREST IN THE EQUITY OF THE HOME.

■ James contends that the trial court erred in ordering the equal division of the entire equity of the residence of the parties. He contends that Betty's interest should be limited to the interest she accrued from the date of the last remarriage. This issue was determined in *Henderson v. Henderson,* 764 P.2d 156, 159 (Okla.1988) which followed a long line of cases in reaching its result.[23] We held in *Henderson* that the property division provisions of a divorce decree stand inviolate by actions of the divorced parties—including the remarriage of those parties—unless the parties vacate, set aside, or modify the decree in a manner authorized by statute. Neither James nor Betty sought to change the property division.

■ The trial court erred in awarding Betty one-half of the home because in the previous divorce the residence was awarded to James, and no action was taken by either party to change the status of the home. However, if the value of the property increased as a result of the couple's joint efforts during the third marriage, Betty is entitled to an interest in the appreciation of the property.[24]

## CONCLUSION

The cause is remanded to the trial court for a hearing to determine the amount of the workers' compensation award which constitutes jointly-acquired property subject to equitable distribution, and to ascertain whether the couple's residence appreciated in value during the course of the couple's third union. The award of one-half of the husband's social security benefits to the wife is reversed.

REVERSED AND REMANDED.

LAVENDER, SIMMS, DOOLIN, HARGRAVE and SUMMERS, JJ., concur in Part One.

OPALA, C.J., concurs in part in Part One.

HODGES, V.C.J., and ALMA WILSON, J., dissents in Part One.

OPALA, C.J., HODGES, V.C.J., and LAVENDER, SIMMS, DOOLIN, HARGRAVE and SUMMERS, JJ., concur in Part Two.

ALMA WILSON, J., dissents in Part Two.

OPALA, C.J., and LAVENDER, SIMMS, DOOLIN and HARGRAVE, JJ., concur in Part Three.

HODGES, V.C.J., and ALMA WILSON and SUMMERS, JJ., dissent in Part Three.

21. United States Const., Art. VI, cl. 2 provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."
*Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1, 11 (1979).

22. *Flemming v. Nestor,* 363 U.S. 603, 610, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960).

23. The result reached in *Henderson v. Henderson,* 764 P.2d 156, 159 (Okla.1988), was based on prior case law. *Bewley v. Bewley,* 266 P.2d 436–37 (Okla.1953); *Dunlap v. Dunlap,* 88 Okla. 200, 212 P. 608–09 (1923).

24. *Ford v. Ford,* 766 P.2d 950, 952 (Okla.1988).

OPALA, Chief Justice, concurring in Part I only insofar as it holds that temporary and permanent total and temporary partial disability payments for in-coverture periods are spousal assets.

In Part I of today's opinion the court holds that "[a] workers' compensation disability award is marital property only to the extent that it recompenses for the couple's loss of income during the marriage. To the extent that it compensates for loss of post-divorce earnings by the injured party, it is separate property." [1] In my view, the question whether payments in satisfaction of a workers' compensation claim constitute separate or marital property depends upon the kind of disability for which benefits are paid. Although *all* payouts are tied to an earnings' formula, I would hold today that payments for *permanent partial disability* may *not* be included in the marital estate. Under Oklahoma's cur-rent benefits regime an injured worker with permanent partial disability receives compensation for *loss of bodily (physical) function alone.* None of it is intended as replacement of lost earnings. On the other hand, benefits for temporary total disability [2] as well as permanent total disability [3] may be treated as marital property. They are clearly designed as replacement of *lost earnings rather than as recompense for loss of the worker's corporal fitness.*

When first enacted in 1915,[4] Oklahoma's regime for delivery of benefits to an injured worker was intended to restore lost earnings.[5] A 1941 amendment [6] eliminated the need to establish loss of earning power in order to receive compensation for permanent partial disability.[7] Somewhat later and in the face of total statutory silence, "disability" came to be measured by the worker's capacity to perform "ordinary

1. The court adopts the "analytical approach" to determine whether a compensation award is to be treated as separate or marital property. According to today's opinion "the separate property of the injured spouse includes economic losses occurring after the termination of the marriage, including the amount of the award which constitutes loss of future wages and future medical expenses."

2. See 85 O.S.Supp.1990 § 22(2), whose pertinent terms provide:
 " * * * In cases of temporary total disability, *sixty-six and two-thirds percent ... of the employee's average weekly wages shall be paid to the employee during the continuance thereof....*" (Emphasis added.)

3. See 85 O.S.Supp.1990 § 22(1), whose pertinent terms are:
 " * * * In case of total disability adjudged to be permanent, *sixty-six and two-thirds percent ... of the employee's average weekly wages shall be paid to the employee during the continuance thereof....*" (Emphasis added.)

4. Our workers' compensation reparations regime has neither common-law roots nor antecedents. It is traceable to an English statute modeled after a German prototype of the Bismarck era. See *Fenwick v. Oklahoma State Penitentiary,* Okl., 792 P.2d 60, 64, (1990) (Opala, V.C.J., dissenting).

5. See *Nelson v. Rialto Mining Co.,* 194 Okl. 628, 154 P.2d 87, 89 (1944); *United States Casualty Co. v. Steiger,* 179 Okl. 407, 66 P.2d 55, 57 (1937).

6. The terms of 85 O.S.1941 § 22 were amended to provide as follows:
 " * * *
 "Other Cases: In all other classes of disabilities, *excluding only those heretofore referred to in sub-division three, [regarding permanent partial disability,]* which disabilities result in loss of use of any portion of an employee's body, and which disabilities are *permanent in quality but partial in character,* the compensation ordered paid shall be sixty-six and two-thirds per centum of the average weekly wage during that portion of the number of weeks which the partial disability of the employee bears to the total permanent disability.
 " * * * " (Emphasis added.)
 Before 1941 this paragraph in § 22 provided as follows:
 " * * *
 "Other cases: In this class of disabilities[, those which are permanent and partial,] the compensation shall be sixty-six and two-thirds per centum of the difference between his average weekly wages and his wage earning capacity thereafter in the same employment...."

7. *Service Pipe Line Company v. Cargill,* Okl., 289 P.2d 961, 962–963 (1955); *Folson Auto Supply v. Bristow,* Okl., 275 P.2d 706, 710 (1954). See also *Amerada Petroleum Corporation v. Lovelace,* 184 Okl. 140, 85 P.2d 407 (1938) (the court's syllabus ¶ 1), where the court held that a claimant is entitled to compensation for permanent partial disability "without regard to the effect thereof upon his earning capacity."

manual or mechanical labor." [8]

When the present version of the Workers' Compensation Act was enacted in 1977,[9] *two* distinct definitions of disability were introduced—one for permanent total disability and another for permanent *partial* disability.[10] A permanently and totally disabled worker is one who *lacks the capacity to earn any wages and is hence eligible for wage replacement.*[11] Permanent partial disability, on the other hand, means *permanent impairment.*[12] "Permanent impairment" is defined as *"any anatomical or functional abnormality or loss* after reasonable medical treatment has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made. * * * "[13] (Emphasis added.) This definition "not only abandons the old theory of ordinary manual or mechanical labor,

but also *sets up a new and more specific means of evaluating permanent partial disability by directly equating it to permanent impairment."* [14] (Emphasis added.) "Impairment" clearly stands for loss of physical function. Permanent partial disability benefits provide recompense *for the worker's lost corporal function and not for foregone income.*[15]

In contrast to the impairment regime, the purpose of temporary or permanent total disability compensation is to replace the incapacitated worker's lost earnings. Only the latter payments can be reached for division as marital assets. They clearly are intended as a *loss-of-earnings* form of payout.[16] The same is also true of temporary partial disability benefits.[17] This compensation form, like that for temporary total disability, is not only *based on lost wages;* its very purpose is to provide recompense

---

**8.** See *J.E. Trigg Drilling Co. v. Daniels*, 193 Okl. 644, 145 P.2d 944, 946 (1944), where the court held that "[d]isabilities within the meaning of the act refer to *lack of ability to do ordinary manual or mechanical work and labor...."* (Emphasis added.)

**9.** 85 O.S.1981 § 1 *et seq.;* Okl.Sess.L.1977, ch. 234 § 1 *et seq.,* effective July 1, 1978.

**10.** See Sturm, The Workers' Compensation Act of 1977, 3 Okl.City Univ.L.R. 1, 12 (1978).

**11.** 85 O.S.Supp.1990 § 3(12). The pertinent terms of § 3(12) provide:
"(12) 'Permanent total disability' means *incapacity* because of accidental injury or occupational disease *to earn any wages in any employment* for which the employee is or becomes physically suited...." (Emphasis added.)
"This definition abandons the theory of ordinary manual or mechanical labor and *focuses only upon the purely economic aspects* of whether the employee has been removed completely from the job market by his injury." Sturm, The Workers' Compensation Act of 1977, *supra* note 10 at 13.

**12.** 85 O.S.Supp.1990 § 3(13). The terms of § 3(13) are:
"(13) 'Permanent partial disability' means permanent disability which is less than total *and shall be equal to or the same as permanent impairment."* (Emphasis added.)

**13.** 85 O.S.Supp.1990 § 3(11).

**14.** Sturm, The Workers' Compensation Act of 1977, *supra* note 10 at 13–14.

**15.** Although for actuarial purposes the compensation *rates* are based upon earnings, *the benefits allowed for permanent partial disability are not.* See 85 O.S.Supp.1990 § 22(3), whose pertinent terms provide:
" * * * In case of disability, partial in character but permanent in quality, the *compensation shall be sixty-six and two-thirds percent ... of the employee's average weekly wages,* and shall be paid to the employee for the period named in the schedule, as follows:
"Thumb: *For the loss* of thumb, sixty (60) weeks.
"First Finger: *For the loss* of the first finger, commonly called the index finger, thirty-five (35) weeks.
" * * *
"Arm: *For the loss* of an arm, two hundred fifty (250) weeks.
" * * * " (Emphasis added.)

**16.** See 85 O.S.Supp.1990 § 22(1), *supra* note 3, and § 22(2), *supra* note 2.

**17.** See 85 O.S.Supp.1990 § 22(4), whose pertinent terms provide:
"4. Temporary Partial Disability. In case of temporary partial disability, *except the particular cases mentioned in paragraph 3 of this section[ regarding permanent partial disability],* an injured employee shall receive sixty-six and two-thirds percent ... of *the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment* or otherwise, if less than before the injury, *during the continuance* of such partial disability. * * * " (Emphasis added.)

for loss of income "*during the continuance*" of the disability period.[18] As distinguished from all other payout classes, *permanent partial disability* contemplates *recompense for lost physical fitness*, though the amount paid the worker is measured by a percentage of wages he (or she) would have earned but for the covered injury.[19]

Unlike today's opinion, I would treat an award for permanent partial disability as separate property of the married awardee to whom it is a form of recovery for his (or her) impaired body function. Benefits for temporary and permanent total disability and for temporary partial disability are for lost income. Payments that fall under these latter categories should hence be legally available for spousal division.

The husband in this divorce case settled his workers' compensation claim by joint petition. The record does not disclose the nature of his impaired physical condition. To the extent that the lump-sum settlement may be found to include compensation for permanent partial disability, it should be severed on remand from the rest of the award and set apart to the husband as his separate, non-marital asset.

For the reasons stated, I would not classify permanent partial disability as replacement of earnings but as recompense for lost bodily function. *The concept is too closely associated with "impaired corporal fitness" to be transmogrified by judicial fiat into a marital asset.*[20]

---

**18.** The phrase "during the continuance" is included in the terms of all three subsections of 85 O.S.Supp.1990 § 22 which provide the schedule of compensation for permanent total disability, § 22(1), *supra* note 3, temporary total disability, § 22(2), *supra* note 2, and temporary partial disability, § 22(4), *supra* note 17. The subsection on *permanent partial disability*, § 22(3), does not contain the quoted language. See *supra* note 15.

**19.** See 85 O.S.Supp.1990 § 22(3), *supra* note 15.

**20.** Assuming, for the sake of argument, that the presence of a replaced earnings' element could be infused into permanent partial disability by judicial interpretation, there would still be no legal basis for marital division of these payouts. As a class of entitlements, permanent partial disability lacks sufficient textual earmarks for its recognition as an item of spousal property interest.