James W. CARTER, Petitioner,

v.

C & F PIPELINE SERVICE, Oklahoma Property and Casualty Guaranty Fund, and Workers' Compensation Court, Respondents.

No. 87386.

Court of Civil Appeals of Oklahoma, Division No. 4.

March 11, 1997.

Ron Collier, Collier Law Office, Inc., Oklahoma City, for Petitioner.

Robert Highsaw, Law Office of W. Jeffrey Dasovich, Oklahoma City, for Respondents.

GOODMAN, Presiding Judge.

This is an original proceeding to review an order of a Workers' Compensation Court three-judge panel affirming the trial court's award of permanent partial disability benefits for loss of use of the claimant's eye and disfigurement to his face. Based upon our review of the record and applicable law, we sustain in part, vacate the order, and remand with directions.

I

Claimant James W. Carter filed a Form 3 alleging that on March 19, 1992, he was injured during the course of his employment as a mechanic for C & F Pipeline Service when a drive chain came off a water pump, struck him, and injured the left side of the face, including his left eye. The employer admitted liability, both parties objected to the other party's medical evidence, and the employer requested the court to appoint an independent medical examiner.

On January 2, 1996, the claimant's claim for loss of use of his left eye and disfigurement came on for hearing. Both parties joined in offering the medical report and deposition of the court-appointed independent medical examiner, who concluded that the claimant "has a permanent loss of 100% of the left eye." The doctor had been provided two earlier eye exams taken by the claimant. The first, in 1989, showed uncorrected visual acuity of 20/20. The second, in 1990, was taken after an accident "with a hot piece of metal in his eye [and] salve in the eye," which, the doctor said, "will blur your vision quite a bit." As a result, the expert said he could "[n]ot really" offer a professional opinion of left eye vision, "[n]ot on that date, no." Under further questioning, however, the doctor said "a natural progression of deterioration ... for a person his age ... [i]f you do away with the ointment, you would assume, probably about 20/40.... preexisting partial impairment of the left eye prior to the on-the-job injury.... [h]is eye was, evidently healthy and correctable to 20/20." The doctor concluded that, according to the Snellen Chart, the claimant had a 16.4 percent pre-existing loss of uncorrected vision, therefore "eighty-three point six percent loss of the left eye would be attributable to this injury."

The claimant objected to reducing the 100 percent loss of use by the expert's speculative "guesstimate" as to pre-existing loss of visual acuity due to aging. He had previously provided the court with case law and argument supporting his objection.

In an order filed January 4, 1996, the trial court found, in relevant part, that:

–3–

[A]s a result of said injury, claimant sustained 83.6 percent permanent partial disability to the left eye (over and above a pre-existing 16.4% permanent partial disability to the left eye)....

    ....

–5–

[A]s a result of said injury, claimant suffered serious and permanent disfigurement to the face (left side of mouth)....

The claimant appealed to a three-judge panel, which affirmed the order. The claimant seeks our review.

II

The claimant contends "[i]t has long been the rule in workers' compensation cases that the total loss of use of a scheduled member shall not be reduced by a prior partial disability of the member," and therefore the order under review must be vacated. *See, e.g., Oklahoma Planning and Resources Board v. Morgan,* 347 P.2d 1029 (Okla.1959); *Eagle–Picher Mining & Smelting Co. v. Murphy,* 169 Okla. 180, 35 P.2d 952 (Okla. 1934). The claimant argues that our courts have consistently distinguished between injuries causing partial loss of vision and those causing functional loss of the eye, and that 85 O.S.1991, § 22(3), equates permanent loss of use of an eye with the loss of the eye, and dictates a scheduled award of 200 weeks for such loss.

The employer argues, however, that with the 1978 enactment of the Workers' Compensation Act the "Act went from awarding disability for the ability to earn wages at the performance of manual labor, to awarding a statutorily defined disability caused by the permanent medical impairment or functional loss to the body occasioned by an injury [and] an employer should only pay for disability caused by its employment." Specifically, the employer relies on 85 O.S.1991, § 22(7), which states:

In the event there exists a *previous impairment which produced permanent disability* and the same is aggravated or accelerated by an accidental personal injury

... compensation for permanent disability shall be only for such amount as was caused by such accidental personal injury ... and *no additional compensation shall be allowed for the pre-existing disability or impairment.* (Emphasis added.)

Thus, the employer contends "[t]here are good grounds for questioning the continued applicability" of the pre–1978 case law relied upon by the claimant.

The claimant cites *Protein Technologies International/Ralston Purina v. Hammock,* 876 P.2d 728 (Okla.Civ.App.1994), wherein the employer sought review of an order awarding compensation for loss of an eye to a claimant who, before the work-related accident, was industrially blind. The employer argued that because the claimant had an "unadjudicated 100% permanent partial disability to the right eye before this accident .... there can be no further additional blindness." The court rejected the employer's argument, stating:

[Workers' Compensation Court] Rule 33 speaks to calculating the percentage of eye impairment. *In this case the issue is loss of use, not impairment.* [Title] 85 O.S. 1991 § 22[ (3) ] allows 200 weeks compensation for the loss of an eye. That same section also equates permanent loss of use with loss of the member itself. Later in the subsection, permanent *partial* loss of use is spoken to, and only here is there a mention of percentage of loss.

The court concluded:

Where there is sufficient vision for the satisfactory performance of labor, an award *for total permanent loss of use of the eye, or for the loss of the eye, should be made without deduction for partial pre-existing loss of vision.* (Citations omitted.)

*Hammock* does indeed appear to support the claimant's contention. However, *Hammock* relies exclusively on the very case law the employer questions, and does not address the role of § 22(7) where there is medical evidence of a pre-existing physical impairment. Therefore, contrary to the claimant's argument, we find *Hammock* does not state "the rule applicable under the facts in this case for review."

■ We believe, however, the employer has overstated the breadth and impact of the 1978 enactment. As the court stated in *Roberts v. Matrix Services, Inc.,* 863 P.2d 1242, 1244 (Okla.1993): "In the case of permanent partial disability, the worker may be able to work, but the award recognizes a diminishment of bodily function *and attendant effect on wage-earning capacity.*" (Emphasis added.) *"Compensation is not paid to reimburse for injuries sustained. It is awarded for compensation in lieu of wages during the duration of the impairment." Crocker v. Crocker,* 824 P.2d 1117, 1125–26 (Okla.1991).

The Workers' Compensation Act establishes the exclusive schedule of compensation to be employed under the Act. 85 O.S.1991, § 22. Medical evidence evaluating the nature and extent of physical impairment must be in substantial compliance with the "latest publication of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment' in effect at the time of the incident for which compensation is sought." 85 O.S.1991, § 3(11); Workers' Compensation Court Rules 20(D) and 21, 85 O.S.1991, ch. 4, app.

■ Section 22(7) is relevant only when competent medical evidence supports a finding that a claimant had "a previous *impairment* which produced permanent *disability* ...." (Emphasis added.) The *Guides* explains the distinction as follows: "Impairment" is a medical determination of an "individual's health status," whereas "disability" is a legal determination assessing the "interaction between impairment and external demands," such as "an alteration of an individual's capacity to meet personal, social, or occupational demands or to meet statutory or regulatory requirements." American Medical Association *Guides to the Evaluation of Permanent Impairment* 2 (3d ed. 1989). That is, " 'impairment' is what is wrong with the health of an individual; 'disability' is the gap between what the individual can do and what the individual needs or wants to do." *Id.* "[I]f the individual is able to meet a particular set of demands, the individual is *not* 'disabled' with respect to those demands, even though medical evaluation may reveal impairment." *Id.*

In this matter, it is not necessary to address the claimant's challenge to the probative value of the independent medical examiner's opinion regarding pre-existing diminishment of the claimant's uncorrected vision. We find there is no evidence to support the preliminary conclusion that the claimant's preexisting visual *impairment*, if any, caused any *disability* as defined by the *Guides*. Indeed, the evidence unequivocally proved that, before his injury, the claimant was able to meet all personal and employment-related demands and therefore "is *not* disabled with respect to those demands, even though medical evidence may reveal impairment."

■ We hold no competent evidence supports the trial court's order reducing the award for permanent *disability* caused by the work-related total loss of use of the claimant's left eye by deducting therefrom any pre-existing *impairment*. The order under review is vacated in part and the matter is remanded with directions to enter an order awarding the claimant 32.8 weeks accrued compensation at $185 per week. The award for disfigurement is sustained.

SUSTAINED IN PART, VACATED IN PART, AND REMANDED WITH DIRECTIONS.

TAYLOR, V.C.J., and REIF, J., concur.