Gale C. BANDOW, Appellant,

v.

Faye D. BANDOW, Appellee.

No. S–3248.

Supreme Court of Alaska.

June 29, 1990.

James L. Johnston, Anchorage, for appellant.

Kenneth P. Jacobus, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

### I.

The Bandows were married in 1961. In 1981 Gale was the alleged victim of medical

malpractice. The Bandows filed suit against the surgeon considered responsible for the malpractice, and in 1986 received a substantial settlement, including an annuity which provides for a monthly payment of $1,850. Such payments are to continue for 20 years or the duration of Gale's life, whichever is longer. Should Gale die within 20 years, Faye will receive the remaining monthly payments. This settlement was not apportioned between past and future items of damage, or between Gale's damages and those suffered by Faye for loss of consortium.

Approximately one year after the settlement the Bandows separated and subsequently divorced. The trial court determined that the annuity was marital property and awarded half of it to Faye. The court's classification of the annuity as marital property is the subject of this appeal.

## II.

Property division upon divorce is governed by AS 25.24.160(a)(4).[1] This statute requires application of a three-step process. The trial court must first determine what property is available for distribution, then ascertain the value of that property and, finally, equitably allocate the property between the parties. *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983).

Here we are concerned only with the first step, i.e., the identification of assets available for distribution. AS 25.24.-160(a)(4) states that all marital property (property "acquired ... during coverture") is available for distribution. The statute also permits invasion of separate property (property "acquired before marriage"[2]) when required by the balancing of the equities between the parties.[3]

On appeal, Gale challenges the trial court's determination that the settlement annuity was distributable as an item of marital property. According to Gale, the fact that the injuries and settlement occurred during marriage does not automatically lead to the conclusion that the entire annuity was "acquired ... during coverture" for purposes of AS 25.24.160(a)(4). He argues that the trial court should have treated as his separate property portions of the annuity which were intended to compensate for his separate property losses. Gale further argues that to the extent the annuity compensates him for lost post-marital earnings, post-marital medical expenses, and his pain and suffering (both during and after marriage) the annuity recompenses his separate property losses, and should therefore be classified as his separate property. With this much of Gale's argument, we agree. However, we do not agree with Gale's argument that this court can in effect determine that the entire annuity is attributable to his separate property losses. Accordingly, the trial court's division of the property is reversed, and the case remanded for further proceedings consistent with the following.

1. Under AS 25.24.160(a)(4), the trial court may provide

   for the division between the parties of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property of either spouse acquired before marriage when the balancing of the equities between the parties requires it[.]

2. Because post-marital acquisitions are "excluded from the category of marital property," *Schanck v. Schanck*, 717 P.2d 1, 3 (Alaska 1986), this opinion will also apply the "separate property" label to such assets, but only as a convenient shorthand. The invasion of post-marital acquisitions for purposes of property division is obviously not permitted by the statute. *See infra.*

3. Whether an asset is marital property or separate property

   "is in large part a legal determination, involving the interpretation of AS [25.24.160(4)], and applying legal principles to the facts of the case." *Wanberg*, 664 P.2d at 570. With respect to the legal analysis employed at the trial court level, review is based upon our independent judgment. *Id.* Whether or not the equities require invasion of premarital assets, on the other hand, lies within the broad discretion of the trial court and will not be overturned absent a clear abuse of discretion. *Id.*
   *Julsen v. Julsen*, 741 P.2d 642, 646 n. 4 (Alaska 1987).

## III.

██ In recent years, courts from other jurisdictions have taken one of three approaches to classification of tort and workers' compensation recoveries. The approach taken by the trial court is in line with what has been termed the "mechanistic" approach. *See Johnson v. Johnson*, 317 N.C. 437, 346 S.E.2d 430, 435 (1986). Under this approach, the time of injury, and perhaps receipt of the recovery, controls the classification of the recovery. Where, as in the present case, a recovery is received during marriage for injuries sustained during marriage, the entire recovery is deemed to be "acquired" during marriage and, absent a statutory exception of such recoveries from the definition of marital property, must therefore be classified as marital property. *See e.g., Liles v. Liles*, 289 Ark. 159, 711 S.W.2d 447, 452 (1986).

The second approach has been characterized as "unitary." *See Weisfeld v. Weisfeld*, 545 So.2d 1341, 1346 (Fla.1989). Under this approach, even if the recovery was received during marriage for injuries sustained during marriage, the recovery is not deemed to be "acquired" during marriage because it arises from fortuitous circumstances entirely unrelated to a marital initiative to acquire assets. *See e.g., Unkle v. Unkle*, 305 Md. 587, 505 A.2d 849, 854 (1986). The unitary approach thus results in a classification directly contrary to that reached under the mechanistic approach; i.e., the entire recovery is treated as the separate property of the injured spouse. *See id.*

The third, and more middle-ground, approach has been termed "analytic." *See Johnson*, 346 S.E.2d at 435–438. Under this approach, the purpose for which the recovery is received controls its classification; a recovery, or portion thereof, being classified as that which it is intended to replace. *Id.* To the extent the recovery compensates for losses to the marital es-

tate, it is marital property. To the extent the recovery compensates for losses to a spouse's separate estate, it is his or her separate property. *Id.*

Although a definite trend in other jurisdictions is not yet discernible,[4] we believe that the analytic approach represents the best view. Since one spouse has no right to the other spouse's separate property,[5] she should have no right to a tort recovery which is intended as a substitute for this property. Conversely, that which is the marital property of both spouses should not be converted to the separate property of one spouse simply because it is replaced by a tort recovery. This rationale is no less obvious today than it was when we implicitly adopted the analytic approach in *Miller v. Miller*, 739 P.2d 163 (Alaska 1987). In *Miller* we stated:

[A] workers' compensation disability award is marital property only to the extent that it compensates for loss of earnings during the marriage. To the extent that a workers' compensation award compensates for loss of post-divorce earnings, it must be considered separate property, even if the compensable injury occurred during the marriage. The policy rationale is obvious: since one spouse has no right to the other spouse's earnings after the marriage ends, she should have no right to a disability award that is intended as a substitute for those future earnings.

*Id.* at 165.

██ Accordingly, the lost earnings component of the present annuity could be a combination of marital and separate property. To the extent this component replaces pre-divorce lost earnings, it is marital property; to the extent it replaces post-divorce lost earnings, it is Gale's separate property. Likewise, any other economic component of the annuity should be classified as that which it replaces or restores. For example, if the annuity compensates for medical expenses, it could be a combina-

---

4. *See Weisfeld*, 545 So.2d at 1344; Freed and Walker, *Family Law in the Fifty States: An Overview*, 21 Fam.L.Q. 417, 499 (1988).

5. Except to the extent that pre-marital acquisitions may be invaded when the balancing of the equities so requires. AS 25.24.160(a)(4).

tion of marital and separate property: marital property to the extent it compensates for pre-divorce expenses; Gale's separate property to the extent it compensates for post-divorce expenses.

■ More difficult questions are presented with respect to portions of the annuity which compensate for non-economic losses; i.e., Gale's pain and suffering and Faye's loss of consortium. Indeed, it seems strange to even suggest that there is a "property" interest, be it marital or separate, in one's physical or mental health. But this is no reason to shun thoughtful consideration of the nature of that which is purportedly replaced by the settlement. Unfortunately, these non-economic characteristics have been reduced to dollars and cents, and the latter is in fact "property" which must be classified for purposes of distribution.

In this regard, at least one thing seems clear. Any "property interest" the marital enterprise may have in a spouse's physical or mental health ceases to exist upon termination of the marital enterprise. Therefore, to the extent that the annuity is intended to compensate for a post-divorce non-economic loss, it is the separate property of the claimant spouse.[6]

Whether the marital enterprise has a "property interest" in the physical and mental health of the spouses during the marriage is a more difficult question. States adopting the analytic approach answer this question in the negative, classifying awards for pre-divorce non-economic loss as the separate property of the claimant spouse. *See Weisfeld*, 545 So.2d at 1345. One of the reasons given for this

classification is particularly compelling. Damages for pain and suffering, mental anguish, and the like compensate for a loss which is so personal to the claimant spouse that classifying them as marital property would be inequitable.

Nothing is more personal than the entirely subjective sensations of agonizing pain, mental anguish, embarrassment because of scarring or disfigurement, and outrage attending severe bodily injury. Mental injury, as well, has many of these characteristics. Equally personal are the effects of even mild or moderately severe injury. None of these, including the frustrations of diminution or loss of normal body functions or movements, can be sensed, or need they be borne, by anyone but the injured spouse. Why, then, should the law, seeking to be equitable, coin these factors into money to even partially benefit the uninjured and estranged spouse? In such case the law would literally heap insult upon injury. The uninjured spouse has his or her separate and equally personal right to an action for loss of consortium. Just as there is no equitable reason for that spouse to profit from his or her ex-mate's recompense for suffering, there is no justification for allocation of a share in the right to loss of consortium. The only damages truly shared are those discussed earlier, the diminution of the marital estate by loss of past wages or expenditure of money for medical expenses. Any other apportionment is unfair distribution.

*Amato v. Amato*, 180 N.J.Super. 210, 434 A.2d 639, 643 (App.Div.N.J.1981). *See also*

---

6. With respect to Gale's post-divorce pain and suffering, this conclusion is obvious. After the marriage ended, any pain and suffering endured by Gale cannot, by any stretch of the imagination, be regarded as a loss to the marital estate. This is not changed by the fact that compensation was, in effect, provided in advance.

If the divorce was not apparent at the time of the settlement, however, advance compensation for Faye's loss of consortium may include a windfall recovery for loss of consortium expected to occur during the time following the date of divorce. In light of the divorce, the marital estate cannot claim any actual injury. It is also

unlikely that Faye's separate estate actually incurs any post-divorce loss of consortium. As between these two estates, we think that Faye's separate estate is the only logical candidate for receipt of the windfall.

Likewise, if it were established that the settlement overcompensated for Gale's post-divorce pain and suffering, he would be the only logical candidate for the windfall. We also point out that our rationale for classifying pre-divorce non-economic losses as separate property, *infra*, provides an alternative rationale for classifying post-divorce losses as separate property.

*Landwehr v. Landwehr*, 111 N.J. 491, 545 A.2d 738, 742–43 (1988) (following *Amato* ).

From our decision in *Julsen v. Julsen*, 741 P.2d 642 (Alaska 1987), we discern a second reason for treating awards for non-economic losses incurred during marriage as separate property. In *Julsen*, we held that an inheritance received by one spouse is not "acquired … during coverture" for purposes of equitable distribution under AS 25.24.160(a)(4), even if it was received during coverture, and even though the statute does not specifically except such property from the definition of marital property. *Id.* at 648.[7] This classification followed from (1) our view that equitable distribution is based on a partnership theory of marriage, and (2) the plain meaning of the term "acquired." Under the partnership theory of marriage, property obtained without the joint efforts of the parties, such as inherited property, should not ordinarily be subject to division. *Id.* Likewise, the term acquired "[a]s commonly used … presupposes some effort, endeavor or action in the acquisition of property, and thus, does not include property, like inheritances, which are received gratuitously from a third party." *Id.*, n. 8.

Similarly, tort recoveries result from fortuitous circumstances entirely distinct from the efforts or economic undertakings of the marital partners. Therefore, where a portion of the award replaces, so to speak, that which is instead intimately related to the person of the claimant spouse, we think it appropriate to regard that portion of the award as the separate property of the claimant spouse.

■■■ Faye argues that allocating an undifferentiated tort recovery is an impossible task and, therefore, the analytic approach should be disregarded in cases, like the present one, where the recovery is not allocated among various elements of damage. We disagree. Although mathematically exact allocation of the award may not be possible, we are confident of the ability of the trial court to make a reasonable apportionment. Like the Supreme Court of New Jersey, "[w]e do not expect that the allocation of such awards will present any serious problems. Trial courts are used to allocating and tracing assets in equitable distribution cases." *Landwehr*, 545 A.2d at 744.

■■■ However, to the extent that the parties do not provide sufficient evidence to make a reasonable allocation to a separate estate, the award should be classified as marital property. *See id. See also Johnson*, 346 S.E.2d at 439–40. Therefore, on remand, Gale will have the burden of proving by a preponderance of the evidence what amount or proportion of the annuity represents compensation for loss of his separate property; i.e., compensation for his post-divorce economic losses, and compensation for non-economic losses, whether incurred before or after divorce. Likewise, should Faye claim that a portion of the annuity represents compensation for loss of her separate property, i.e., loss of consortium, she will have the burden of proving this by a preponderance of the evidence. Following the apportionment, the trial court should equitably divide the marital estate.

REVERSED and REMANDED.

---

7. We relied, in part, on the fact that the Uniform Marital Property Act classifies inherited property as separate property. *Julsen*, 741 P.2d at 647. The UMPA also classifies as separate property a recovery for personal injury, except to the extent that the recovery is attributable to expenses paid from marital property and pre-divorce lost earnings. Uniform Marital Property Act §§ 4 and 17, *reprinted in* 9A U.L.A. 103 (1987). Thus, under the UMPA, awards for both pre- and post-divorce non-economic losses are treated as the claimant spouse's separate property.