**Michael C. HATTEN, Appellant,**

v.

**Bonita A. HATTEN, Appellee.**

**No. S–6183.**

Supreme Court of Alaska.

May 31, 1996.

---

\* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

Blaine D. Gilman and Patricia A. Huna, Kenai, for Appellant.

Patrick J. McKay, Anchorage, for Appellee.

Before RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

RABINOWITZ, Justice.

## I. *INTRODUCTION*

In this appeal we are required to determine whether the superior court properly characterized and apportioned tort litigation proceeds in dividing a marital estate upon divorce. In addition, this appeal involves an attorney's fees issue.

## II. *FACTS AND PROCEEDINGS*

Michael and Bonita Hatten were married in 1980. They separated in August 1990, and, after a brief attempt at reconciliation, a Decree of Divorce was entered on December 2, 1992. A two-day trial was held in September 1993 for the purpose of resolving property division issues. On appeal, Michael argues that the superior court improperly included his separate property in the marital estate. At issue are tort damages in two separate cases, one pending and one completed.

The first case involved a wrongful termination action brought by Michael against a former employer, Union Oil. Michael's complaint included claims for both economic and non-economic damages. This litigation was eventually settled with Michael receiving $30,000 designated in the settlement agreement as damages for mental duress. Notwithstanding the designation, the superior court concluded that the settlement proceeds "were based more on economic loss rather than emotional distress." Accordingly, it held that the "settlement proceeds in that suit were marital property, constituting recovery for loss of earning capacity." Michael argues that the superior court's holding is flawed for two reasons: (1) as a matter of law, the superior court is required to accept the classification of damages provided for in a settlement agreement; and (2) the superior court improperly took judicial notice of Michael's deposition in the Union Oil wrongful termination litigation.

The second case involves damages stemming from the Exxon Valdez oil spill. As a commercial fisherman, Michael has pending claims for damages relating to his past and future lost earnings. Though counsel for both parties discussed this pending claim at trial, the superior court failed to make any mention of the Exxon suit in its Memorandum of Decision. Subsequently, on November 15, 1993 [1]—forty-seven days after the superior court issued its decision—Bonita filed a motion for relief from judgment under Civil Rule 60(b). On December 7, 1993, the superior court granted Bonita's motion and issued an Addendum to its Memorandum of Decision. In the addendum, the superior court concluded that proceeds received from the Exxon Valdez oil spill are a marital asset, and it apportioned the potential proceeds as of the date of trial, September 1993: That is, the superior court held that any damages received by Michael which reflect losses occurring prior to September 1993 are marital property, but that any damages that reflect losses accruing after September 1993 are

---

1. Bonita's motion for Rule 60(b) relief is not included in the record, but Bonita does not contest Michael's assertion that she filed the motion on November 15, 1993.

Michael's separate property. Michael argues that the superior court erred for two reasons: (1) Bonita's Rule 60(b) motion should have been denied since it reflects an otherwise untimely attempt on her part to file either a motion for reconsideration or an appeal of the property division; and (2) even if properly granted, the appropriate legal date for dividing spill proceeds is August 1990, the date Michael and Bonita first separated, not September 1993, the date of trial.

Michael's final point on appeal is that the superior court erred in awarding Bonita $6,000 in attorney's fees.

## III. DISCUSSION

### A. Pending Exxon Valdez Tort Litigation Claims

#### 1. The superior court did not err in granting Bonita's Rule 60(b) motion.

Though the issue was raised at trial, the superior court failed to address Michael's pending lawsuit against Exxon in its Memorandum of Decision, dated September 29, 1993. On November 15, 1993, forty-seven days after the court entered its decision, Bonita filed a Rule 60(b) motion for relief from judgment.[2] The superior court subsequently granted her motion and entered an Addendum to its Findings of Fact and Conclusions of Law, which states that any damages recovered by Michael in the Exxon litigation for wages lost prior to September

---

**2.** Civil Rule 60(b) reads:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise or excusable neglect;
> . . . .
> The motion shall be made within a reasonable time, and . . . not more than one year after the date of notice of the judgment[.]

**3.** The rules governing relief from final judgments on grounds such as mistake or fraud are applicable to property settlements in divorce decrees. *Larson v. Larson*, 661 P.2d 626 (Alaska 1983). Furthermore, relief from judgment is addressed to the sound discretion of the trial court, and the court's ruling will not be disturbed except upon a showing of abuse of discretion. *Gravel v. Alaskan Village, Inc.*, 423 P.2d 273 (Alaska 1967).

---

1993 are marital property and "shall be equally divided between the parties." Michael argues that since time had expired for the filing of either a motion for reconsideration or a notice of appeal, and since the court's omission was easily recognizable by Bonita, her Rule 60(b) motion was improperly granted.[3]

In this instance, there can be no doubt that Michael's pending litigation against Exxon was raised at trial. In fact, while examining a witness, Michael's attorney effectively conceded that a portion of the proceeds eventually received are a marital asset:

> [I]n fact, . . . it's our position that Mrs. Hatten's entitled to 50% of the [Exxon] claims up to the present, which would represent damages which are reflected during the course of the marriage.

Given the above, we conclude that the superior court did not abuse its discretion in granting Bonita's Rule 60(b) motion. By all indications, the superior court's omission was an inadvertent factual mistake, not a mistake of law.[4] Similarly, insofar as Bonita's motion was seventeen days tardy,[5] Michael was not prejudiced since the superior court extended the time in which he could timely appeal, and he took advantage of this extension.[6]

This court has held that Rule 60(b)(1) motions based on facts which are known to a party at a time when direct appeal is possible must be brought within thirty days. *Kenai*

---

**4.** Rule 60(b) motions based on errors of law should be filed within the same time period for the filing of a notice of appeal, which is thirty days. *Alaska Placer Co. v. Lee*, 502 P.2d 128, 130 (Alaska 1972) (citing *Alaska Truck Transport, Inc. v. Berman Packing Co.*, 469 P.2d 697 (Alaska 1970)). *But see Alaskan Village, Inc. v. Smalley*, 720 P.2d 945, 951 (Alaska 1986) (holding that trial court had discretion to relax the thirty-day rule in the interests of justice).

**5.** Bonita's Rule 60(b) motion was filed forty-seven days after final judgment, whereas a timely notice of appeal must be filed within thirty days. Alaska R.App.P. 204(a)(1).

**6.** "One factor the court may use to determine reasonableness is whether there was prejudice to the other party caused by the delay." *Allen v. Allen*, 645 P.2d 774, 777 n. 7 (Alaska 1982) (citation omitted).

*Peninsula Borough v. English Bay Village,* 781 P.2d 6, 7 (Alaska 1989). However, we take this occasion to disapprove of our decision in *Kenai Peninsula* insofar as it would bar the Rule 60(b) motion in the case at bar.[7] In short, we conclude that only Rule 60(b) motions alleging a mistake of law need be filed within the time frame applicable to an appeal. We have also held that a motion "was sufficiently timely under Civil Rule 60(b)" if brought within six weeks of the date of the final order, a time-frame comparable with the instant case.[8] For all these reasons, we hold that the superior court did not abuse its discretion in granting Bonita's Rule 60(b) motion.

2. *Michael waived any argument that proceeds from the Exxon litigation should be divided as of the date of the parties' separation.*

▮ Michael also argues that even if Bonita's Rule 60(b) motion was properly granted, the superior court erred by using the September 14, 1993 date of trial rather than August 1990, the date of the parties' initial separation for purposes of dividing the proceeds from Michael's lost earnings claim against Exxon. In response, Bonita argues that Michael has waived this issue for purposes of appeal since, at trial, his counsel impliedly accepted the September 1993 trial date as the proper date of apportionment. She also argues that the superior court's adoption of the date of trial was not clearly unjust.[9]

▮ We have said that although the date for valuation of marital property should be as close as practical to the date of trial, the date for segregating marital from post-marital property is ordinarily the date of the functional termination of the marriage. *Hanlon v. Hanlon,* 871 P.2d 229, 231 (Alaska 1994). This date is "when the marriage has terminated as a joint enterprise" or "when a married couple cease functioning economically as a single unit." *Hanlon,* 871 P.2d at 231 (citations omitted). Often the date of permanent separation is the date used for segregating marital from post-marital property. *Gallant v. Gallant,* 882 P.2d 1252, 1255 (Alaska 1994).

In determining whether the superior court erred in using the September 1993 date of trial as the date for distinguishing marital from post-marital property and apportioning Michael's lost earning damage proceeds, four dates are potentially relevant: (1) August 1990, the date that the parties separated for the first time; (2) March 1992, the date Bonita testified as being the date of separation and the date Michael filed for divorce;[10] (3) December 1992, the date the decree of divorce was issued; and (4) September 1993, the date of trial.

In *Schanck v. Schanck,* 717 P.2d 1, 3 (Alaska 1986), we stated:

As a general rule, we hold that property accumulated with income earned after separation that is intended to, and does in fact, lead to a divorce is excluded from the category of marital property, as long as it is obtained without the invasion of any pre-separation marital asset. We decline to specify, as a matter of law, that the effective date when such earnings become severable from marital property is at separation or at filing for divorce. Each case must be judged on its facts to determine

---

7. As observed in one treatise, the federal courts seem to be holding that a reasonable time for a Civil Rule 60(b) motion to correct an error of law "may not exceed the time in which appeal might have been taken if the error involved a fundamental misconception of law, but that this limit does not apply if the judicial error was a minor oversight." 11 Charles A. Wright et al., *Federal Practice and Procedure* § 2866, at 389 (1995).

8. *Wood v. Collins,* 812 P.2d 951, 959 (Alaska 1991).

9. The superior court "has broad latitude in making its property division." *Bays v. Bays,* 807 P.2d 482, 485 n. 4 (Alaska 1991). We will not

disturb a property division absent a showing of abuse of discretion, i.e., clear injustice. *Id.* However, whether the superior court applied the appropriate legal standard in exercising its broad discretion is a question of law. *Id.*

10. At trial Bonita testified:

To me I think my legal separation was March of 1992, because [until then] we were staying at each other's house, we were still having sexual intercourse, and ... I was still cooking meals for him and doing his dishes and housework at his house and my house.

when the marriage has terminated as a joint enterprise.

Here the marriage had terminated as a joint enterprise no later than March of 1992, the date when Michael filed for divorce and the date that Bonita testified was the time of separation.

However, this court has also held that a spouse, based on statements made at trial, may waive an otherwise valid argument that the court improperly divided assets as of the date of trial:

> As noted above, the superior court found from the testimony of both parties, and the statements of their respective counsel, that the parties agreed Judy was entitled to one-half of the value of Raymond's accumulated pension. Study of the record shows that Raymond considered the entire pension accrued during the parties' cohabitation and marriage to be part of the marital estate. At trial, Raymond never differentiated the pension contributions he made before the parties' marriage or those made after the parties' separation. In light of the superior court's finding as to this issue, and its evidentiary support in the record, we conclude that Raymond waived any objection to the superior court's division of pension benefits as of the date of trial.

*Bays,* 807 P.2d at 486.

In the instant case, statements made by Michael's counsel during direct examination of Robert Cowan, Michael's attorney in the Exxon case, are of particular significance:

> Q: [W]hen the ... Alyeska and the Exxon claims become settled and the money is distributed, you'll be able to tell, will you not, what percentage of the claim is for future ... damages, using today's date as a reference point? September 13th, and what percentage was damages which accrued from the time of the Exxon spill to today's date?
>
> . . . .

> Q: [O]ur problem is, is the damages are going to be running from the Exxon spill, past the present date, in fact, and it's our position that Mrs. Hatten's entitled to 50% of the [Exxon] claims up to the present, which would represent damages which are reflected during the course of the marriage.... But the future damages would be solely Mr. Hatten's property.

Given the above, we affirm the superior court's decision to apportion the prospective proceeds from the Exxon litigation as of the date of trial.

**B.** *Michael's Wrongful Termination Lawsuit* [11]

1. *The designation of damages in a settlement agreement does not control whether the proceeds are separate or marital property.*

In *Bandow v. Bandow,* 794 P.2d 1346 (Alaska 1990), this court adopted the "analytic" approach for classifying tort damages for purposes of dividing a marital estate:

> Under this approach, the purpose for which the recovery is received controls its classification; a recovery, or portion thereof, being classified as that which it is intended to replace. To the extent the recovery compensates for losses to the marital estate, it is marital property. To the extent the recovery compensates for losses to a spouse's separate estate, it is his or her separate property.

*Id.* at 1348 (citations omitted). Thus, insofar as Michael's settlement reflects mental anguish, an element of non-economic damage, the proceeds are his separate property.

Michael settled his wrongful termination claim against Union Oil for $30,000 which was designated in the settlement agreement as damages for mental distress. Notwithstanding the settlement agreement, the superior court found that

> [Michael's] claims in the suit, emphasized by their continued reference in the Amend-

---

**11.** Whether the settlement proceeds from Michael's wrongful termination lawsuit are marital or separate property "is in large part a legal determination...." *Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983). As such, this court's review of the legal issues is based upon its independent judgment. *Id.* However, any factual findings the superior court made in determining whether to include the settlement proceeds in the marital estate "will not be disturbed unless clearly erroneous." *Bays,* 807 P.2d at 485 n. 4 (citations omitted).

ed Complaint, were based more on economic loss rather than emotional distress. The Court finds that the settlement proceeds in that suit were marital property, constituting recovery for loss of earning capacity.[12]

Michael argues that under *Bandow* the superior court is required to accept the classification of damages as contained in the underlying settlement agreement. To hold otherwise, he claims, is "bad policy" in that it causes unpredictable results and promotes mini-trials.

 Michael's argument is unpersuasive. The goal of the "analytic" approach of classifying damages is to assure that any division of tort proceeds reflects the underlying components of damage. *Bandow*, 794 P.2d at 1348. To hold that the superior court is precluded from reclassifying damages would be self-defeating; that is, if the formal structuring of settlement proceeds subsequently controlled their classification as either marital or separate property, then the "analytic" approach would be meaningless.

Since at times parties designate damages in tort settlements in manners wholly unrelated to the underlying harm, a particular classification of damages may have little basis in reality. Consequently, though the labeling of Michael's damages as "mental anguish" may carry evidentiary weight, it is not dispositive of their true character. To hold otherwise elevates form over substance and creates perverse incentives in structuring settlements where one of the parties is involved in a divorce proceeding, or anticipates such an eventuality. Thus, we conclude under *Bandow* that the designation or structuring of damages in a settlement agreement does not control whether the proceeds are separate or marital property.

2. *The superior court's classification decision regarding the character of the proceeds from the settlement of the wrongful termination claim against Union Oil requires a remand.*

As noted previously, the superior court concluded that the proceeds from Michael's wrongful termination suit settlement "were based more on economic loss rather than emotional distress." As a consequence, the superior court concluded that "the settlement proceeds in that suit were marital property, constituting recovery for loss of earning capacity."

We think the superior court's predicate finding for its holding that the Union Oil settlement proceeds were marital property is inherently ambiguous. Given that the superior court did not find that settlement claims were based wholly on economic loss, this issue must be remanded to the superior court for additional proceedings to determine whether or not these proceeds should be allocated as between marital and nonmarital property.[13]

On remand, the superior court is authorized to take additional evidence on this issue. More specifically, the superior court should admit into evidence Michael's deposi-

---

**12.** In regard to the settlement, the superior court additionally found that

 a. Husband filed a FIRST AMENDED COMPLAINT in Case No. 3KN–86–480 CI, *MICHAEL HATTEN vs. UNION OIL COMPANY OF CALIFORNIA, INC., AND LARRY McCALLISTER*. In that document husband alleged in part that as a result of Union Oil Company's termination his ability to obtain comparable employment was substantially impaired (Paragraph XX), that he suffered a substantial impairment of future earning capacity in an amount exceeding ONE HUNDRED THOUSAND DOLLARS (Paragraph XXX), that the termination substantially impaired his ability to perform his trade as crane operator (Paragraph XXXV) and that he suffered damages due to the infliction of emotional suffering and distress in excess of ONE HUNDRED THOUSAND DOLLARS (Paragraph XXXII).

 b. Husband's deposition in the suit was taken on June 5, 1987. Deposing counsel asked husband questions concerning his claims for loss of reputation and emotional distress. Husband was unable to answer with any specificity the nature of the loss or the extent and type of distress other than nightmares involving crane operation.

**13.** We recognize that an argument can be made that although the superior court's statement that damages were based "more on economic loss" implies there are both economic and emotional distress damages, its use of "rather than emotional distress" implies that it found that the claims were based on economic loss and not on emotional distress. Nevertheless, we believe the better approach is to remand this issue in order to obviate any latent ambiguity in the superior court's findings relating to this issue.

tion which was taken in the Union Oil litigation as well as any additional relevant evidence the parties may offer on this issue. The superior court should then enter further findings of fact and conclusions of law regarding the nature of this property and its proper distribution.

### C. *Attorney's Fees*

■ Michael's final point on appeal is that the superior court abused its discretion in awarding Bonita attorney's fees of $6,000, the amount Bonita's counsel requested during closing arguments. Counsel for Michael responded in part, "With respect to attorney's fees, Your Honor, I would request that [counsel for Bonita] file a motion at the end of this case and brief it to provide an itemization of his attorney's fees.... [I]t's just inappropriate to award fees unless there's an itemization." The superior court impliedly decided that itemization was not necessary and granted Bonita's request for attorney's fees in the amount of $6,000.

AS 25.24.140(a) provides:

During the pendency of the action, a spouse may, upon application and in appropriate circumstances, be awarded expenses, including

(1) Attorney fees and costs that reasonably approximate the actual fees and costs required to prosecute or defend the action;....

Given the provisions of AS 25.24.140(a)(1) and the fact that Michael objected to Bonita's request for an award of $6,000 in attorney's fees, we hold that the superior court erred in awarding Bonita attorney's fees without requiring an itemization of Bonita's actual attorney's fees. Therefore, we vacate the superior court's award of attorney's fees, and remand the issue of attorney's fees to the superior court.

### IV. *CONCLUSION*

AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this opinion.

MOORE, C.J., not participating.