Janet McKowen Smith ("the wife") appeals a divorce judgment insofar as it (1) failed to award her a share of a payment Danny Smith ("the husband") had agreed to accept in settlement of his claim as a result of injuries he sustained in an automobile accident during the marriage ("the settlement payment"); (2) failed to award her certain items of personal property; (3) failed to award her more than $300 per month in periodic alimony; and (4) failed *Page 1148 
to order the husband to pay the wife's premiums for health insurance pursuant to COBRA for more than six months. We reverse and remand with instructions.
On April 2, 2004, the husband sued the wife for a divorce on the grounds of incompatibility and an irretrievable breakdown of the marriage. On May 3, 2004, the wife answered the husband's complaint and counterclaimed for a divorce on the same grounds alleged by the husband.
The case proceeded to trial on November 2, 2005. On November 18, 2005, the trial court entered a divorce judgment. Among other things, the divorce judgment divided the property that the parties agreed was marital property, awarded the wife periodic alimony in the amount of $300 per month, and ordered the husband to pay the premiums necessary to cover the wife under the husband's health-insurance policy pursuant to COBRA for a period of six months. The wife had contended that the settlement payment was marital property subject to division in the divorce; however, the husband had contended that the settlement payment was his separate property and, therefore, was not subject to division in the divorce. By omitting any mention of the settlement payment in the divorce judgment, the trial court implicitly held that the settlement payment was the husband's separate property rather than marital property.
On December 7, 2005, the trial court, acting ex mero motu, entered an order amending the provision of the divorce judgment dividing the parties' personal property. That same day, the wife filed a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate the divorce judgment. Following a hearing on the wife's motion, the trial court, on January 12, 2006, entered an order again amending the division of the parties' personal property but otherwise denying the wife's Rule 59(e) motion. The wife then timely appealed to this court.
On appeal, the wife first argues that the trial court erred in failing to award her a share of the settlement payment because, she says, the settlement payment is marital property that was subject to division in the divorce. The husband, on the other hand, contends that the trial court did not err in omitting any mention of the settlement payment from the divorce judgment because, the husband says, the settlement payment is his separate property and, therefore, was not subject to division in the divorce.
The division of property in a divorce proceeding is governed by § 30-2-51, Ala. Code 1975. That section states:
 "(a) If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage."
Thus, subject to certain statutory exceptions, "`marital property generally includes property purchased or otherwise accumulated by the parties during the marriage. . . .'"Kaufman v. Kaufman, 934 So.2d 1073, 1080
(Ala.Civ.App. 2005) (quoting Nichols v. Nichols,824 So.2d 797, 802 (Ala.Civ.App. 2001) (emphasis omitted). *Page 1149 
The Alabama courts have addressed the issue whether a payment in settlement of a spouse's personal-injury claim constitutes marital property in only one case, namely, Golden v.Golden, 681 So.2d 605 (Ala.Civ.App. 1996). In Goldenv. Golden, this court expressly limited its holding to the "peculiar" facts of that case. 681 So.2d at 609. Therefore, no Alabama precedent governs the resolution of that issue in the case now before us.
Courts of other states have utilized three different approaches in determining whether to treat a payment in settlement of a spouse's personal-injury claim as marital property or as the separate property of the injured spouse. See Golden v.Golden, 681 So.2d at 609 (Crawley, J., dissenting). One approach, sometimes referred to as the mechanistic approach, deems the settlement payment to be marital property if it is acquired during the marriage. See Bladow v. Bladow, 665 N.W.2d 724 (N.D. 2003); and In re Marriage of Simon,856 P.2d 47 (Colo.Ct.App. 1993). Another approach, sometimes referred to as the unitary approach, deems the settlement payment to be the injured spouse's separate property regardless of when the settlement payment is acquired. See, e.g.,Fleitz v. Fleitz, 200 A.D.2d 874, 606 N.Y.S.2d 825 (1994). The third approach is sometimes referred to as the analytic approach. See Bollaci v. Nieporte-Bollaci,863 So.2d 440 (Fla.Dist.Ct.App. 2003); Tynes v. Tynes,860 So.2d 325 (Miss.Ct.App. 2003); and Sullivan v. Sullivan, 159 S.W.3d 529 (Mo.Ct.App. 2005). Under the analytic approach, "to the extent that its purpose is to compensate an individual for pain, suffering, disability, disfigurement, or other debilitation of the mind or body, a personal injury award constitutes the separate non-marital property of an injured spouse." Hardy v. Hardy, 186 W.Va. 496, 501,413 S.E.2d 151, 156 (1991); and Staton v. Staton,218 W.Va. 201, 206, 624 S.E.2d 548, 553 (2005). Likewise, the portion of a personal-injury settlement intended to compensate the injured spouse for loss of future wages is deemed to be that spouse's separate property under the analytic approach. Bandow v.Bandow, 794 P.2d 1346, 1348-49 (Alaska 1990). However, "economic losses, such as past wages and medical expenses, which diminish the marital estate are distributable as marital property when recovered in a personal injury award or settlement" under the analytic approach. Hardy,186 W.Va. at 501, 413 S.E.2d at 156. In Bandow, the Alaska Supreme Court explained the rationale underlying the analytic approach as follows:
 "Damages for pain and suffering, mental anguish, and the like compensate for a loss which is so personal to the claimant spouse that classifying them as marital property would be inequitable.
 "`Nothing is more personal than the entirely subjective sensations of agonizing pain, mental anguish, embarrassment because of scarring or disfigurement, and outrage attending severe bodily injury. Mental injury, as well, has many of these characteristics. Equally personal are the effects of even mild or moderately severe injury. None of these, including the frustrations of diminution or loss of normal body functions or movements, can be sensed, or need they be borne, by anyone but the injured spouse. Why, then, should the law, seeking to be equitable, coin these factors into money to even partially benefit the uninjured and estranged spouse? In such case the law would literally heap insult upon injury. . . . The only damages truly shared are . . . the diminution of the marital estate by loss of past wages or expenditure of money for medical expenses. Any other apportionment is unfair distribution.'" *Page 1150 
Bandow v. Bandow, 794 P.2d at 1349 (quoting Amatov. Amato, 180 N.J.Super. 210, 218-19, 434 A.2d 639, 643
(App.Div. 1981)).
We find the rationale underlying the analytic approach persuasive. Accordingly, we adopt that approach for determining whether a spouse's personal-injury settlement or award is marital property or the separate property of the injured spouse. Under the analytic approach, the spouse claiming that the settlement or award is his or her separate property bears the burden of proving that claim. See Bandow,794 P.2d at 1350. Likewise, if the other spouse claims that a portion of the settlement or award is compensation for loss of consortium and, therefore, constitutes his or her separate property, he or she shall bear the burden of proof with respect to that claim.[1] Id.
In the case now before us, the trial court did not have before it any evidence establishing that the settlement payment was the husband's separate property under the analytic approach. Consequently, we must reverse the divorce judgment insofar as it divided the marital property because the trial court's omission of the settlement payment from the division of marital property is not supported by the evidence. We remand the case to the trial court for the trial court to reconsider the division of marital property in light of this opinion. However, because the husband was not on notice that he bore the burden of proof with respect to the issue whether the settlement payment was marital property or his separate property, we instruct the trial court, on remand, to allow the husband to introduce additional evidence regarding that issue and to allow the wife to introduce evidence in rebuttal of the husband's evidence. Because the award of alimony is intertwined with the division of property, we also reverse the trial court's judgment as to the award of alimony so that, on remand, the trial court may reconsider its award of periodic alimony in conjunction with its reconsideration of its division of the parties' marital property. See Chambers v. Chambers,823 So.2d 709, 716 (Ala.Civ.App. 2001).
Our reversal of the trial court's judgment as to the division of marital property and the award of alimony based on the first issue raised by the wife renders moot the second issue raised by the wife, which is whether the trial court erred in its division of the parties' personal property, and the third issue raised by the wife, which is whether the trial court abused its discretion in limiting the award of periodic alimony to the wife to the amount of $300 per month. The fourth issue raised by the wife is whether the trial court erred in ordering the husband to pay her premiums for health-insurance coverage under the husband's policy pursuant to COBRA for a period of only six months. COBRA allows the wife to maintain her health-insurance coverage with the husband's health insurer for a period of 36 months.See 29 U.S.C. §§ 1162(2)(A)(iv) and 1163(3). The wife suffers from, among other things, two bulging disks in her back and rosacea.[2] She requires regular treatment for the rosacea and periodic treatment for the bulging disks. She earned only $10,413 *Page 1151 
the year before the trial, and her employer does not provide her with health insurance. The husband testified that he anticipated earning $52,000 to $54,000 in 2005. Given the disparity in the parties' incomes, the wife's health problems, her need for medical treatment, and her inability to obtain health insurance through her employer, we conclude that the trial court erred in failing to require the husband to pay the wife's health-insurance premiums for at least the 36 months she was entitled to coverage under the husband's health-insurance policy pursuant to COBRA. Cf. Wilkinson v. Wilkinson,828 So.2d 924, 928 (Ala.Civ.App. 2001) (holding that the trial court erred in failing to require a wife, at a minimum, to pay the husband's health-insurance premiums for the 36 months he was entitled to coverage under the wife's policy pursuant to COBRA).
Finally, each of the parties has requested an award of an attorney's fees on appeal. We grant the wife's request and award her an attorney's fee in the amount of $1,250. We deny the husband's request.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, J., concurs.
CRAWLEY, P.J., concurs specially, with writing.
PITTMAN and MURDOCK, JJ., concur in the result, without writing.
[1] In the case now before us, the wife does not contend that any portion of the settlement payment represents compensation for her loss of consortium.
[2] Merriam-Webster's Collegiate Dictionary 1082 (11th ed.2003) defines "rosacea" as "a chronic inflammatory disorder involving esp. the skin of the nose, forehead, and cheeks that is characterized by congestion, flushing, telangiectasia, and marked nodular swelling of tissues esp. of the nose."