NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

## THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID D. SEALS, | ) | |
| | ) | Supreme Court No. S-16109 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-14-01856 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| LAUREL R. SEALS, | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1599 – November 9, 2016 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: David A. Golter, Golter Law Office, LLC, Palmer, for Appellant. Notice of nonparticipation filed by Deborah Burlinski, Burlinski Law Office, LLC, Anchorage, for Appellee Laurel R. Seals.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices.

## I.    FACTS AND PROCEEDINGS

David and Laurel Seals married in 1987. David worked as a union drywall finisher and painter; Laurel was not employed. David was severely injured in an automobile collision in October 2011. As a result of the collision he accumulated nearly $84,000 in medical bills and was expected to incur roughly an additional $45,000 to $90,000 in future medical expenses. David's earning capacity was reduced, and he lost

---

[*]    Entered under Alaska Appellate Rule 214.

retirement benefits because he could no longer work as a painter through his union. Doctors expected David to experience ongoing deterioration and pain requiring treatment for the rest of his life, including frequent chiropractic and massage visits.

The driver at fault for the collision had a $50,000 insurance policy limit. David settled with the driver for the value of that policy limit, plus interest. The funds were received during the marriage and were exhausted for marital purposes.

David had a State Farm policy providing underinsured motorist coverage with a $250,000 policy limit. David sued State Farm for payment of that policy limit. He provided detailed estimates of his economic losses, including lost wages, past and future medical expenses, and lost retirement benefits. David also listed non-economic damages such as loss of enjoyment of life, pain and suffering, and loss of consortium. David did not assign the non-economic elements specific dollar values because his economic losses alone far exceeded his underinsured motorist coverage policy limit. State Farm settled with David for his policy limit and sent two separate payments in September and November 2014. Neither David nor State Farm apportioned the proceeds among the damages David had disclosed.

David and Laurel separated in May 2014, prior to David receiving the State Farm payments. With those two payments David paid his attorney's contingent fee, an existing medical subrogation claim, and his existing chiropractic bills. Altogether David retained approximately $108,720 from his State Farm settlement after these payments.

The parties' divorce and marital property division were finalized in October 2015. The superior court found that David had retained $151,667 from the State Farm settlement. At the time of settlement the funds had not been apportioned for pain and suffering, lost wages, future wages, or post-separation medical expenses. Applying *Bandow v. Bandow*, the court thus determined that David had not proven by a preponderance of the evidence that some or all of these net proceeds were intended for

post-separation damages or were his separate property and so characterized this sum as a marital asset.[1] The court therefore assigned all of the remaining settlement proceeds to David as a marital asset and concluded that David must make a $67,676 equalization payment to Laurel. Although David testified that he had less than $85,000 remaining from the State Farm payout and the court noted that there was nothing "suggesting . . . that [David] still ha[d] any of those settlement proceeds," the court still ordered him to make this balancing payment.

David appeals. Laurel filed a notice of nonparticipation and submitted no brief.

## II.    DISCUSSION

David argues that the superior court misconstrued case law in characterizing the remaining settlement proceeds as marital and that its allocation between marital and separate assets is unjust. He also argues that the court erred in valuing the remaining settlement proceeds at $151,667.

### A.    The Superior Court's Application Of *Bandow* Was Erroneous.[2]

We have followed the *Bandow* approach when classifying personal injury settlements as marital or separate property: the recovery's purpose controls its

---

[1]    794 P.2d 1346, 1350 (Alaska 1990) (holding that if "parties do not provide sufficient evidence to make a reasonable allocation to a separate estate, [then] the award should be classified as marital property").

[2]    A trial court's characterization of settlement proceeds as separate or marital in a divorce proceeding is reviewed for abuse of discretion. *Grace v. Peterson*, 269 P.3d 663, 668 (Alaska 2012) (citing *Fortson v. Fortson*, 131 P.3d 451, 456 (Alaska 2006)). "However, when the trial court makes a legal determination in . . . carrying out this step, that determination is reviewed *de novo*." *Id.* (quoting *Lundquist v. Lundquist*, 923 P.2d 42, 47 (Alaska 1996)).

classification.[3] If the recovery, or part of it, compensates for losses to the marital estate, then it is marital property.[4] Conversely, losses to a spouse's separate estate are characterized as the spouse's separate property.[5] A party must prove by a preponderance of the evidence the settlement amount representing compensation for loss of separate property.[6] If a party "does not provide sufficient evidence to make a reasonable allocation to a separate estate, [then] the award should be classified as marital property."[7]

The superior court found no designation of purpose — such as pain and suffering, lost wages, or past and future medical expenses — for any portion of David's State Farm settlement, and it determined that David had provided insufficient evidence to classify the asset as separate property. Accordingly, the court classified the entire remainder of David's settlement as marital property.

David argues that the superior court misconstrued *Bandow* and the burden of proof because, in applying the insufficiency-of-evidence presumption against him, it incorrectly relied on testimony that no portion of the State Farm settlement was designated to any damages categories. David submits that this construction of *Bandow* is incorrect because, as we explained in *Hatten v. Hatten*, parties in divorce proceedings are not required to adopt designations, or lack of designations, from when a settlement

---

[3]     *Bandow*, 794 P.2d at 1348; *see also Grace*, 269 P.3d at 672; *Hatten v. Hatten*, 917 P.2d 667, 672-74 (Alaska 1996).

[4]     *Bandow*, 794 P.2d at 1348.

[5]     *Id.*

[6]     *Id.*

[7]     *See id.* at 1350.

was made.[8] Rather, a court may reclassify proceeds because damages designations in tort settlements may bear no resemblance to the underlying harm and "may have little basis in reality."[9] David further argues that omitting designations at settlement should be no more dispositive for classifying property than including designations. Accordingly, he claims that the superior court improperly applied *Bandow* by concluding that a lack of damages designations in the settlement foreclosed any claim in the divorce proceedings that his settlement proceeds could be his separate property.

David is correct that the superior court found determinative the testimony that no damages designations had been specified at the time of settlement. The court's decision on the record summarized David's personal injury attorney's testimony, emphasizing that "[t]here was no designation at any time that any portion of the settlement was for . . . expenses incurred after the parties separated." The court then applied the *Bandow* presumption, concluding that David "failed to establish that any portion [of his settlement] was for post-separation [special damages]" and so the court must "consider all of the net proceeds . . . as marital."

We conclude that the court misconstrued *Bandow*. Although David had not established damages designations at the time of settlement, he should not have been barred from claiming those proceeds as separate property. In both *Bandow* and *Hatten* we prescribed apportioning settlement awards in divorce proceedings when the trial court

---

**8**       *See Hatten*, 917 P.2d at 673 ("[W]e conclude under *Bandow* that the designation or structuring of damages in a settlement agreement does not control whether the proceeds are separate or marital property.").

**9**       *Id.* ("[I]f the formal structuring of settlement proceeds subsequently controlled their classification as either marital or separate property, then the 'analytic' approach [under *Bandow*] would be meaningless.").

has been given sufficient information.[10] Here, although sufficient uncontroverted evidence in the record would have allowed for the apportionment of settlement proceeds between marital property and David's separate property,[11] it appears that no attempt at apportionment was made. As David correctly contends, the State Farm settlement was intended to compensate for his *entire* loss.[12] Because the marital estate had already been mostly compensated for its loss, the remaining settlement funds should not be used to compensate the marital estate for more than the amount still owed.[13]

Potential economic losses incurred by the marital estate before David and Laurel separated were medical expenses and lost wages. David's medical expenses were mostly paid through union benefits, subject to subrogation, and the settlement proceeds fully paid the subrogation claim prior to trial. The record shows that $3,082.68 in medical expenses had not been paid and thus potentially were owed by the marital estate. David testified that he had paid $25,600 and still owed $1,200 in chiropractic bills at the time of trial. Because he had paid the $25,600 from settlement proceeds, the marital estate did not incur a loss; the $1,200 that had not been paid at the time of trial also was not a loss to the marital estate. The record thus supports David's claim that the marital estate was fully compensated for his medical expenses with the possible exception of $3,082.68.

---

**10** *See id.*; *Bandow*, 794 P.2d at 1350 ("[W]e are confident of the ability of the trial court to make a reasonable apportionment . . . '[and] do not expect that the allocation of such awards will present any serious problems. Trial courts are used to allocating and tracing assets in equitable distribution cases.' " (quoting *Landwehr v. Landwehr*, 545 A.2d 738, 744 (N.J. 1988))).

**11** *See Bandow*, 794 P.2d at 1350.

**12** *See id.* at 1348 (holding that recovery is "classified as that which it is intended to replace").

**13** *See id.* at 1348-49.

By comparing David's pre-accident income[14] with his income between the accident date and the parties' separation date,[15] the wage loss to the marital estate also can be estimated from evidence in the record. David's earnings for that time frame were reduced by about $91,173[16] compared to his average earnings from 2006 to 2010. The marital estate received about $55,272 in additional income,[17] offsetting some of David's wage loss. Deducting the offsetting amount from David's total lost wages results in a $35,901 marital income loss. Including this net loss and $3,082.68 in possible out-of-

---

[14]   From 2006 to 2010 David's yearly gross income averaged $68,544. The parties separated on May 17, 2014, or 32.5 months after the accident. Dividing David's annual average by 12 gives a monthly average of $5,712, and multiplying the monthly average by 32.5 results in a projected gross income of $185,640 based on his pre-accident average.

[15]   David was unable to work for about three months, and when he returned to work he earned less; his yearly gross income was $42,720 in 2012, $30,568 in 2013, and $36,575 in 2014. May 17 was the 136th day of 2014. Dividing David's 2014 wages by 365 gives a daily average of $100.21, and multiplying the daily average by 136 results in about $13,628 in marital income. David's actual income between the accident and separation dates can therefore be estimated at about $86,916.

[16]   David's projected lost wages would have been $185,640, but because he went back to work and earned roughly $86,916 his actual lost wages were about $98,724. And, as David argues, the marital estate's actual loss was less than $98,724 because a 6.2% Social Security tax and a 1.45% Medicare tax would have reduced the total wage loss. David calculates this number to be $91,173.

Although we use David's figure, it is only an estimate of the marital estate's lost wages. The record shows that David did not pay Social Security tax in 2014 and he may be overestimating the total tax deduction; without a Social Security deduction the estimated net loss would be $97,293. But an income tax deduction would also reduce the marital estate's net loss.

[17]   Before the parties separated they received: $1,981 in union disability benefits that were not charged in the subrogation claim; $2,665 for earned income tax credit in 2013; and $50,626 as David's settlement from the insurer of the driver at fault for the collision. This additional income totaled $55,272.

pocket medical expenses, the marital estate's uncompensated economic loss from David's accident may have been, at most, about $40,000.

By contrast, David's post-separation economic losses, consisting primarily of future lost wages and medical expenses, are projected to be between $327,000 and $372,000.[18] David also suffers from significant physical pain, loss of enjoyment of life, and permanent disability. As David points out, the *Bandow* court recognized that "[t]he only damages truly shared are . . . the diminution of the marital estate by loss of past wages or expenditure of money for medical expenses. Any other apportionment is unfair distribution."[19] Given that the marital estate's total loss at the time of trial appears to be only a fraction of David's separate loss, it seems unjust to designate all of the settlement remainder as part of the marital estate.

Because the testimony and the calculations regarding expenses and lost wages are supported by the record, David met his burden of showing by a preponderance of the evidence that his remaining settlement was not necessarily meant to compensate the marital estate. There was sufficient evidence in the record for the court to have made a reasonable characterization rather than presumptively allocating all of the proceeds as a marital asset. Not apportioning the proceeds during the divorce proceedings and

_____

[18] We arrive at this range by adding David's projected future medical expenses of $45,000 to $90,000 to his projected future income deficiency.

His income deficiency was calculated by subtracting his monthly projected future income ($3,052) from his average monthly income before the accident ($5,712). We estimate his income based on his actual 2013 and 2014 tax returns, as well as his 2012 income estimate. We multiplied the monthly deficiency ($2,660) by the number of months he is projected to work prior to retirement (106) for a total of $281,960.

[19] *Bandow v. Bandow*, 794 P.2d 1346, 1349 (Alaska 1990) (quoting *Amato v. Amato*, 434 A.2d 639, 643 (N.J. Super. App. Div. 1981)).

concluding that David's separate property claim failed simply because his insurance recovery was not apportioned when settlement was reached was error.

**B.      It Was Clear Error To Value The Remaining Settlement At $151,667.**[20]

As David points out, it was undisputed that the gross settlement from State Farm was $250,000. It was further undisputed that from the settlement David's personal injury attorney's $83,333.33 contingent fee was deducted, a $32,346.24 subrogation claim was paid, and $25,600 in chiropractic bills were paid. Deducting these amounts from $250,000 leaves $108,720.43, not $151,667. Finally, David testified that at the time of trial he retained less than $85,000 from the State Farm settlement.[21]

The superior court found that the remaining State Farm settlement, after attorney's fees, subrogation, and chiropractic bills, totaled $151,667. This finding is unsupported by the record, inconsistent with uncontroverted testimony on the settlement remainder's valuation, and clearly erroneous.

## III.   CONCLUSION

We REVERSE the superior court's property division and REMAND for a renewed consideration of David's remaining State Farm settlement proceeds consistent with this decision.

---

[20]      We review a trial court's property valuations in divorce proceedings for clear error. *Fortsonv. Fortson*, 131 P.3d 451, 456 (Alaska 2006). We will find clear error if, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *Walker v. Walker*, 151 P.3d 444, 447 (Alaska 2007).

[21]      We note that assets no longer present at the time of trial are normally not available for distribution and that marital assets spent after separation for marital purposes or normal living expenses are typically not considered in a final property division. *Partridge v. Partridge*, 239 P.3d 680, 692 (Alaska 2010) (first citing *Brandal v. Shangin*, 36 P.3d 1188, 1194 (Alaska 2001); then citing *Jones v. Jones*, 942 P.2d 1133, 1139 (Alaska 1997)) (remanding for findings on whether asset still existed and if so, how it was spent, before making final asset distribution).