Cherie A. TAYLOR, Appellee,

v.

Noble L. TAYLOR, Appellant.

No. 76126.

Court of Appeals of Oklahoma,
Division No. 1.

March 3, 1992.

Jose Gonzalez, Purcell, for appellant.

Linda K. Cardwell, Pauls Valley, for appellee.

## MEMORANDUM OPINION

GARRETT, Presiding Judge:

Appellee Cherie A. Taylor (Cherie) filed a petition for divorce from Appellant Noble L. Taylor (Noble) in 1988. After the petition was filed, but before the divorce became final, Noble was seriously injured in an automobile accident. Cherie and Noble took no further action on the divorce at that time, and Cherie moved back in with Noble to take care of him. He brought an action for injuries suffered in the automobile accident and obtained an out of court settlement. Cherie was not joined as plaintiff in the action, and there was no claim on her behalf for loss of consortium. On January 31, 1990, Cherie filed another petition for divorce from Noble. The previous divorce petition was still pending, and Cherie dismissed it. She testified it was her understanding that it had already been dismissed because she had told her lawyer after Noble's accident that they were not going through with it. The marriage end-

ed on July 12, 1990, pursuant to a divorce decree of that date.

Prior to the entry of the divorce decree, the trial court ordered Noble to place $50,000.00 of his personal injury settlement proceeds in trust during the pendency of the divorce proceeding. In the divorce decree, Cherie was awarded $20,000.00 of the funds in trust as part of the marital property division. Noble contends the trial court committed error in giving Cherie $20,000.00 of the award, claiming the settlement proceeds are his separate property.

■■■■ The issue in this appeal is: are the proceeds of a personal injury settlement the separate property of the injured spouse, and therefore not subject to division as marital property in a divorce case?

The Supreme Court has recently addressed the issue of the nature of disability insurance proceeds [*Christmas v. Christmas*, 787 P.2d 1267 (Okl.1990)], and workers' compensation benefits [*Crocker v. Crocker*, 824 P.2d 1117 (Okl.1991)], of one spouse in a divorce action, and whether the funds represent separate property, or joint funds subject to division. These cases were also cases of first impression in Oklahoma. See also *Rowlan v. Rowlan*, 817 P.2d 1285 (Okl.App.1991), wherein this Court considered the issue of a spouse's federal disability pension. In *Christmas*, the Court used a "replacement approach" to determine the divisibility of disability insurance proceeds in a divorce proceeding. This approach considers the nature of the funds which are being replaced by the disability proceeds. In referring to *Christmas*, the *Crocker* Court stated this approach resembled the "analytical" approach used in other jurisdictions.[1] The Supreme Court adopted this approach because both workers' compensation and disability insurance are forms of deferred compensation and are thus treated similarly for property division purposes. 824 P.2d at 1123. The Court stated, at page 1123:

Because our workers' compensation law characterizes awards as money in lieu of wages, and because of our prior treatment of disability awards in *Christmas*, we adopt the analytical approach. A workers' compensation disability award is marital property only to the extent that it recompenses for the couple's loss of income during the marriage. To the extent that it compensates for loss of post-divorce earnings by the injured party, it is separate property. Because a former spouse has no inherent right to the salary earned by his/her former marriage partner after the marriage is terminated, there is no right to a disability award which is intended to replace future wages.

Oklahoma has not addressed the nature of personal injury awards to injured spouses for purposes of property division in divorce proceedings. In discussing the analytical approach to workers' compensation awards for purposes of divorce property division, the *Crocker* Court stated, at page 1121.

[T]he separate property of the injured spouse includes economic losses occurring after the termination of the marriage, including the amount of the award which constitutes loss of future wages and future medical expenses. The marital property subject to division encompasses the amount of the award which represents lost wages or lost earning capacity sustained during coverture as well as medical expenses paid during the marriage.

The Court noted that this approach had been derived from the division of personal injury awards in divorce actions and cited cases from equitable distribution jurisdictions using the analytical approach. 824 P.2d at 1122, n. 11, 12. Consistency requires us to hold that the analytical approach is proper in the instant case.

In *Bandow v. Bandow*, 794 P.2d 1346 (Alaska 1990), the Supreme Court of Alaska analyzed the various components of a personal injury judgment. Lost earnings could represent marital or separate property, depending upon whether it replaces pre-

---

1. The other approaches mentioned in the Court's discussion are: (1) the mechanistic approach; (2) the case by case approach; and (3) the unitary approach. 824 P.2d at 1123.

divorce lost earnings (marital property) or post-divorce lost earnings (separate property). As to the medical expenses component, it must be determined whether it compensates for pre-divorce or post-divorce expenses. More difficult questions are the components intended to compensate for non-economic losses such as pain and suffering of the injured spouse and the loss of consortium of the noninjured spouse. The Court found that states adopting the analytic approach generally hold that pre-divorce non-economic loss and post-divorce non-economic loss are the separate property of the claimant spouse. The *Bandow* Court stated, at 794 P.2d 1346, 1349:

> Damages for pain and suffering, mental anguish, and the like compensate for a loss which is so personal to the claimant spouse that classifying them as marital property would be inequitable.

Another reason found by the *Bandow* Court for treating such non-economic losses as separate property comes from an analysis of "property acquired during coverture" for purposes of equitable distribution. It finds this classification is based on a "partnership theory of marriage", i.e., property obtained through the joint efforts of the parties. 794 P.2d at 1350. It found that tort recoveries, similar to inherited property, occur due to "fortuitous circumstances entirely distinct from the efforts or economic undertakings of the marital partners" and that non-economic portions of such awards should be determined to be separate property. *Id.*

The Supreme Court of Rhode Island came to the same conclusion in *Kirk v. Kirk*, 577 A.2d 976 (R.I.1990). In using the replacement approach, the Court determined that the pain and suffering component of the injured spouse is not subject to equitable distribution because it replaces that spouse's good health which was acquired before marriage. 577 A.2d at 978. However, that portion of the settlement compensating for past lost wages and past uninsured medical expenses incurred during the marriage which have depleted the marital estate are marital property and subject to division. *Id.* Future lost wages, future loss of earning capacity and future medical expenses, incurred after the entry of divorce, are the separate property of the injured spouse and are not subject to division. *Id.* at 979.

In the instant case, Cherie contends that after Noble's accident, she quit her job, moved herself and the children back into the home and took care of Noble, who required home nursing care. She also testified that she did not understand that Noble's lawyer did not intend to seek damages for loss of consortium on her behalf. She stated she was required to execute a release of liability when she endorsed the settlement check, which also contained her name, when Noble received the settlement proceeds.

Noble's personal injury lawyer testified that he did not include a claim for Cherie's loss of consortium because the parties were not living together at the time of the accident, and that he understood that entry of a final divorce decree was imminent. He stated he discussed this with them. He testified that he advised Cherie to determine what expenses she had incurred because of Noble's injuries, and that it would be included in the prayer for relief in his petition. He stated Cherie never advised him of her damages pursuant to this request. The attorney also stated he advised Noble that it would help his case if he and Cherie lived together with their children while the case was pending.

Cherie testified that at the time of Noble's accident, she had been working for Linda's Convalescent Care Service (Linda's). When the hospital social worker began discussing Noble's care after leaving the hospital, it was decided that Cherie would take care of him as an employee of Linda's. She testified that Linda's told her that it would pay her for her time if and when it was reimbursed by insurance. Cherie was to submit to Linda's the hours spent taking care of Noble. Although she stated Linda's told her that it did not get paid by insurance,[2] Cherie acknowledged

---

2. Noble's personal injury lawyer testified he

thought the bill from Linda's had been paid by

that a W–2 form showed that she had been paid $128.00. She stated she thought that that figure represented pay for more hours than she actually worked.

Although it is Cherie's position that she gave up her job to care for Noble at home, the evidence is not clear as to whether she was actually employed by Linda's during that time. She stated that personnel of Linda's from time to time came to the home and to check on Noble's care. The evidence is conflicting as to whether Cherie was told that her claim for loss of consortium would be included in the petition in Noble's personal injury case. She contends her release of liability precluded her from pursuing the claim later on her own. Although Cherie testified that she had filed the first divorce petition to try to get Noble to go with her to counselling, the evidence is undisputed that at the time of Noble's accident, the parties were not living together as husband and wife. In fact, the divorce decree, which had been signed by Noble, was merely awaiting Cherie's signature.

■ There is no evidence before this Court showing that an allocation was made as to the components of Noble's personal injury settlement. Before this Court can determine whether the trial court abused its discretion in awarding Cherie $20,000.00 of the settlement, there must be a determination made by the trial court, based upon evidence, as to the components of the settlement award. Under the analytic approach, we must have evidence to show what the funds from the award are replacing.

■ The Court in *Bandow v. Bandow,* supra, stated that the analytic approach need not be disregarded in cases where the recovery is not allocated among the various elements of the personal injury damages. 794 P.2d at 1350. The Court stated that the trial court should be able to make a reasonable apportionment of the award, even if not mathematically exact. However, on remand the injured spouse would have the burden of proving by a preponderance of the evidence what amount of proportion of the award represents compensation for loss of his separate property. *Id.*

The award of $20,000.00 to Cherie as property settlement is reversed, and this case is remanded to the trial court with directions to conduct an evidentiary hearing, and to determine the components of the personal injury settlement and what funds they replace. The property settlement shall be made by the Court in accordance with its findings and the views expressed in this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

BAILEY and ADAMS, JJ., concur.

---

Noble's workers' compensation insurance carrier, as he had forwarded it there. The amount of the bill had not been included in the settlement discussions with regard to Noble's medical expenses in the personal injury case "because we had a problem with the source of this bill. Mrs. Taylor was employed apparently at some time for these people."