IN THE MATTER OF THE MARRIAGE OF DIAZ



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF THE MARRIAGE OF DIAZ

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF THE MARRIAGE OF DIAZ
2018 OK CIV APP 17
Case Number: 115780
Decided: 01/19/2018
Mandate Issued: 03/14/2018
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2018 OK CIV APP 17, __ P.3d __

 

IN THE MATTER OF THE MARRIAGE OF DIAZ:

ANGELA DIAZ, Petitioner/Appellee,
v.
ANTHONY DIAZ, Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF
DELAWARE COUNTY, OKLAHOMA

HONORABLE BARRY V. DENNEY, TRIAL JUDGE

REVERSED AND REMANDED
WITH DIRECTIONS

Winston H. Connor, II, Joshua W. Brewer, STOCKWELL & CONNOR, P.L.L.C., Jay, Oklahoma, for Petitioner/Appellee,

Nancy K. Anderson, Oklahoma City, Oklahoma, for Respondent/Appellant.

BRIAN JACK GOREE, VICE-CHIEF JUDGE:

¶1 Husband appeals that portion of the decree of dissolution wherein the trial court found his personal injury settlement to be marital property, and awarded Wife one-half of his settlement. He also appeals that portion of the decree wherein the trial court found Husband gifted Wife the Bristow home and awarded it to her as her separate property.

¶2 Petitioner, Angela Diaz, (Wife) and Respondent, Anthony Diaz, (Husband), were married February 14, 2004. In 2012, Husband participated in a 13-week clinical trial study of a pharmaceutical drug manufactured by Bristol-Myers Squibb to treat hepatitis C. He was 50 years old at the time.

¶3 Thereafter, Husband and Wife filed separate tort claims against Bristol-Myers Squibb that were resolved in a class action lawsuit. In April 2013, the parties received separate settlements of their claims against Bristol-Myers Squibb. The settlement documents did not explain how much of each party's award was allotted for which types of damages.

¶4 Wife's net recovery was $1,106,064.46 which was deposited in a joint bank account with Husband. Husband's net recovery was $1,937,209.21. Of that, Husband deposited $437,209.21 in the same joint account with Wife's award. The remainder of Husband's settlement went into an annuity in his name. The annuity included 180 monthly payments of $5,725.00 followed by a lump sum of $1,000,000.00 to be paid June 1, 2028. Husband's monthly annuity payments began in June 2013. The first annuity payment and those for July, August, and September went into the parties' joint account as Husband had instructed. The parties separated in mid-September, and thereafter, the payments went into Husband's separate account.

¶5 At trial, Husband testified that the Bristol-Myers Squibb drug treatment was extremely painful, and that as a result of the treatment, he no longer has hepatitis C. However, he stated, that "[d]oesn't mean it's --I'm not going to have problems down the road." He also testified that it was his understanding that the medication he received in the clinical trial "affected my heart and can affect it later on." He added that something might also happen with his kidneys.

¶6 In its August 12, 2016 Order, the trial court found, among other things, that Husband had gifted the residence in Bristow to Wife and awarded it to her as her separate property. It also applied the analytical approach in determining what portion of the tort settlement award was separate or marital property. That approach provides that the injured party who claims that some or all of the award is his separate property has the burden of showing what part of the award represents compensation for pain and suffering, personal disfigurement, post separation loss of earning capacity, medical expense or loss of consortium. The trial court found there was evidence that Husband endured more than 3 months of pain due to the use of the drug, but there was no evidence that any portion of the settlement was given for pain and suffering nor was there evidence that any part of it was given for diminished future earning capacity or for disfigurement. Thus, no part of the award was Husband's separate property. As a result, the trial court found it was marital property. It likewise found that although Wife's award was solely for her loss of consortium, she placed that money in a joint account, making it marital property. It found a 50/50 split of the annuity to be an equitable division of that marital property.

¶7 In its Order Regarding Petitioner's Motion to Clarify/Reconsider, among other things, the trial court awarded Husband 56% of the marital estate and awarded Wife 44% of the marital estate. It stated that ". . . although [Husband] did not prove that any of the settlement received in the Bristol-Meyers [sic] lawsuit was his separate property, his pain and suffering and his risk of future health issues was essentially what brought that very large asset into the marital estate. In reconsideration of this matter, the Court therefore finds the marital property split in favor of Husband is fair and equitable."

¶8 In the January 31, 2017, Decree of Divorce and Dissolution of Marriage, the trial court attached the Order as Exhibit E to the decree. In the decree, the trial court ordered that the entire annuity shall be split 50/50 between the parties, including the monthly payments and lump sum due and ordered Husband to reimburse Wife for her half of all payments made into his sole account since the parties separated in September 2013. It determined the amount owed to Wife through August 2016 is $100,187.50. It directed Husband to change the annuity so that the payment is equally divided between him and Wife from September 2016 on. Husband appeals.

¶9 Husband complains that the trial court abused its discretion in finding that his annuity, part of his personal injury settlement, is marital property subject to division and in ordering that the annuity be split 50/50 between the parties. The appellate court will not disturb the trial court's decision regarding property division unless the trial court abused its discretion or the decision is clearly against the weight of the evidence. Gray v. Gray, 1996 OK 84, ¶15, 992 P.2d 615. Although property acquired during marriage is presumed to have been jointly acquired, Husband contends that the annuity is his separate property. Standefer v. Standefer, 2001 OK 37, ¶15, 26 P.3d 104. In Oklahoma, the analytical approach is applied to determine whether a spouse's tort settlement is separate or joint property. The analytical approach attempts to determine the underlying nature of the recovery before characterizing it as either separate or joint property. The purpose for which the award or settlement is received controls its designation, so that to the extent the recovery is compensation for losses to the marital estate, it is marital property, and to the extent it is compensation for a personal loss to a spouse's separate estate, it is separate property. Id. at ¶13.

¶10 In Taylor v. Taylor, 1992 OK CIV APP 22, 827 P.2d 911, in which the Court of Civil Appeals held that the analytical approach applied, it cited Bandow v. Bandow, 794 P.2d 1346 (Alaska 1990), wherein the Supreme Court of Alaska stated:

Lost earnings could represent marital or separate property, depending upon whether it replaces pre-divorce lost earnings, (marital property) or post-divorce lost earnings (separate property). As to the medical expenses component, it must be determined whether it compensates for pre-divorce or post-divorce expenses. More difficult questions are the components intended to compensate for non-economic losses such as pain and suffering of the injured spouse and the loss of consortium of the noninjured spouse. . . . Damages for pain and suffering, mental anguish, and the like compensate for a loss which is so personal to the claimant spouse that classifying them as marital property would be inequitable.

¶11 The trial court found that Husband's "pain and suffering and his risk of future health issues was essentially what brought that very large asset into the marital estate." Nevertheless, the trial court found the settlement documents did not apportion his award into categories of damages.

¶12 Husband urges that the trial court's decision that his annuity, comprised of approximately 3/4 of his individual settlement award, is divisible marital property is against the clear weight of the evidence. Husband admits there is no direct evidence to support a pain and suffering damage allocation in the settlement. Direct evidence is that which will persuade the fact finder of the existence of a fact without the necessity of drawing any inferences from the evidence. Indirect, or circumstantial evidence, is that evidence from which inferences must be drawn in determining the existence of the disputed fact. Estrada v. Port City Properties, Inc., 2011 OK 30, fn 34, 258 P.3d 495. An inference must be based upon something other than mere conjecture or speculation. The inference must be a more probable and more reasonable inference to be drawn from the evidence. Gypsy Oil Co. v. Ginn, 1931 OK 496, ¶7, 152 Okla. 30, 3 P.2d 714. When reviewing the proof's sufficiency, the evidence may be either direct or it may be indirect. Sides v. John Cordes, Inc., 1999 OK 36, ¶14, 981 P.2d 301.

¶13 Husband testified that he was in extreme pain during the Bristol-Myers Squibb hepatitis C drug trial and that the medication affected his heart and could affect it and his kidneys in the future. Wife does not dispute this. Although he received a settlement from Bristol-Myers Squibb which does not document how much of his award was apportioned into categories of damages, the trial court found Husband's pain and suffering and his risk of future health issues was essentially what brought the award into the marital estate. Thus, the probable and reasonable inference is that a substantial portion of Husband's award was allocated for pain and suffering and the risk of future health issues. Gypsy Oil Co. v. Ginn, 1931 OK 496, ¶7. Pain and suffering is personal to Husband, and his risk of future health issues are damages which are his separate property under the analytical approach. Taylor v. Taylor, 1992 OK CIV APP 22.

¶14 Just because a settlement is not allocated among the various types of damages awards does not result in its transformation from separate to marital property. The trial court should be able to make a reasonable apportionment of the settlement, even if not mathematically exact. Taylor v. Taylor, 1992 OK CIV APP 22, ¶15. The trial court's decision finding that Husband's annuity was marital property subject to division is an abuse of discretion and against the clear weight of the evidence. Gray v. Gray, 1966 OK 84, ¶15.

¶15 Husband argues the trial court abused its discretion in finding Husband gifted to Wife the Bristow home and in awarding it to her as her separate property. He argues the home was part of the marital estate, and should have been included in the valuation of it. The payoff was about $149,000.00. Husband and Wife paid off the home after the settlement money arrived. At the time of trial, the value was $70,000.00. Wife testified that prior to trial, Husband ". . . kept trying to tell me [the Bristow home] was mine and I told him not until the Judge decides." Husband testified he did not want the Bristow home.

¶16 A gift inter vivos requires proof of three essential elements: intention to give; complete delivery of the thing given; and acceptance by the donee. McSpadden v. Mahoney, 1967 OK 118, 432 P.2d 432. Here, even if Husband intended to give the Bristow home to Wife, there was no delivery of the deed to her, and she did not accept it. The home is part of the marital estate. Thus, the trial court abused its discretion in awarding Wife the Bristow home as her separate property.

¶17 REVERSED AND REMANDED with instructions to the trial court to reasonably apportion the annuity in a manner consistent with this opinion. It is further instructed to divide equitably the value of the Bristow home between Husband and Wife.[1]

SWINTON, P.J., and MITCHELL, J., concur.

FOOTNOTES

[1] At the time of trial, the value of the Bristow home was $70,000.00.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1992 OK CIV APP 22, 827 P.2d 911, 63 OBJ 1147, Taylor v. Taylor
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2001 OK 37, 26 P.3d 104, 72 OBJ 1190, STANDEFER v. STANDEFER
Discussed
 1966 OK 84, 414 P.2d 305, PENLEY v. GULF INSURANCE COMPANY
Cited
 1967 OK 118, 431 P.2d 432, McSPADDEN v. MAHONEY
Cited
 1931 OK 496, 3 P.2d 714, 152 Okla. 30, GYPSY OIL CO. v. GINN et al.
Discussed at Length
 1996 OK 84, 922 P.2d 615, 67 OBJ 2328, Gray v. Gray
Cited
 2011 OK 30, 258 P.3d 495, ESTRADA v. PORT CITY PROPERTIES, INC.
Discussed
 1999 OK 36, 981 P.2d 301, 70 OBJ 1445, Sides v. John Cordes, Inc.
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA